MADISON W. WOODBERRY ET AL. *v.* MONROE McCLURG, ATTORNEY-GENERAL.

1. CORPORATIONS. *General laws. Corporate powers. Code* 1892, *ch.* 25. *Charter.*

   The powers of a corporation created under general laws are derived from the statute and not from its charter provisions, and a corporation chartered under code 1892, ch. 25, can only exercise the powers therein prescribed.

2. SAME. *Distinct entity. Laws* 1890, *p.* 125. *Stock in other corporations.*

   Every corporation chartered under the general laws of this state is intended to be a distinct and separate entity, and under laws 1900,

ch. 88, sec. 5, so providing, no such corporation can rightfully purchase or own the capital stock, or any part thereof, of any other corporation, whether or not a competing one.

3. ATTORNEY-GENERAL. *Official opinions. Judiciary.*

The courts will not undertake to control the attorney-general in the matter of his official opinions.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

The appellants, Woodberry and others, were plaintiffs in the court below; McClurg, attorney-general, the appellee, was defendant there. The facts are stated in the opinion.

*Shannon & Street* and *Frank Johnston,* for appellants.

The clause, sec. 5, ch. 88, laws 1900, "If such other corporation be engaged in the same kind of business and be a competitor therein," applies to both of the clauses preceding it—that is to say, it applies as well to the clause against a corporation, acquiring the capital stock of other corporations, as to the clause against a corporation acquiring the franchise, plant or equipments of other corporations. It is one entire sentence, with simply a comma before the word "nor." Ordinary grammatical construction of the sentence will demonstrate this.

Bearing in mind that the law under consideration was passed to define trusts and combines, and to provide for the suppression thereof, and to preserve to the people of this state the benefits derived from competition; and remembering that a trust or combination could not be created by one corporation, engaged in a certain kind of business, acquring part or all of the capital stock of another corporation, engaged in a different kind of business, the unsoundness of the attorney-general's contention is apparent.

If the attorney-general's construction of this law is correct, a corporation may purchase the franchise, plant and equipments of a noncompetitive corporation, thereby getting absolute control of the whole thing with full power to dictate its

full policy, and yet he would not allow the same corporation to purchase one share of stock in a noncompetitive corporation, in which latter event, its interest would be so small that it would have no control over its policy.

The effect of the construction contended for by the attorney-general will be looked to by the court in construing the statute. This is more extensive and far reaching than may appear at first view. Upon such construction an incorporated bank could not invest its surplus in the stock of any railroad company or other corporations, whose stock is quoted and sold every day in the stock exchanges of the country.

No insurance company could invest its surplus or earnings in the stock of any other corporation whatever. Savings banks, incorporated, would be restricted in their business investments to bonds or mortgages, and the stock exchanges of the world would be closed against them. In a word, every corporation in this state incorporated by the state, would be shut out of every stock exchange in the world, so far as dealings in stocks are concerned.

The interest of the individual stockholder would be seriously and injuriously affected by such a construction. No stockholder could sell his stock to a Mississippi corporation, but could only sell to individuals. Nor could any stockholder borrow money from any incorporated bank or financial institution in the state on his stock as collateral security, for no bank would take as collateral security a certificate of stock that it could not own.

The purpose to effect such extensive and radical changes in the business in the state cannot reasonably be attributed to the legislature.

*Monroe McClurg*, attorney-general, *pro se.*

An attorney-general, in giving his opinions to the governor as to whether a proposed charter is violative of the constitution and laws of the state, should resolve all doubts against the pro-

.posed charter for the same reason that the courts determine doubtful questions as to whether corporations possess certain powers against the corporation. All grants of power by the sovereign are to be strictly construed against the grant. The best interpretation of the law is the law itself. Section 8 of chapter 88 of the laws of 1900 is too plain and unambiguous to call for aids of construction outside of its own clear and logical language and meaning. The clear purpose and intent of the statute, as gathered from its own language, is (1) to deny the right to any corporation, as such, to purchase or own any of the capital stock of any other corporation, and (2) to deny one corporation the right to purchase or to acquire the franchise, plant or equipments of a competing corporation.

No man can conceive of a more powerful scheme for forming the most powerful combinations than that contended for by appellants. A single bank or a railroad company, a telegraph, express or telephone company might subscribe for or in some other manner "purchase or own" a majority of the capital stock of every noncompeting corporation in the state, and allow such other corporations to share in its stocks and profits. Nor is it easier to find a better illustration than the charter under consideration. A gravel company, organized for the purpose of owning and operating gravel pits, together with all other powers incidental thereto and necessary to the successful·operation of the gravel pits, demands the power to "purchase, subscribe for, take and hold, sell and deal in the stock of and shares of the capital stock of any corporation, joint stock company or association organized under or chartered by the laws of any state of the United States, or under or by the laws of the United States; *Provided*, Such corporation, association or joint stock company is not a competitor or engaged in the same kind of business." How can such powers reasonably conduce to the lawful operation of a gravel pit? Who can imagine the extent of such powers? We must presume that full advantage will be taken of every power granted.

Section 883 of the code requires "clear and definite statement of the purposes for which the corporation is created . . . and the powers to be exercised." Here it is clearly and definitely stated that the purpose is to operate a "gravel pit," and it may be expected that all powers necessary to the successful operation of the pit should be granted, but nothing beyond that. So that, looking to this statute merely as a side light by which to read section 5 of the act of 1900, it is made the more evident that the power to invest in the capital stock of other noncompeting corporations is not within the reasonable contemplation of the powers to successfully operate a gravel pit.

TERRAL, J., delivered the opinion of the court.

M. W. Woodberry and five other citizens of Jones county applied to the governor of the state of Mississippi for a charter of incorporation of the Laurel Gravel Company. The governor referred the proposed charter to the attorney-general for his opinion as to its legality. The attorney-general declined to make such certificate, whereupon this writ of mandamus was brought against him to test the legality of the proposed charter.

A statement of the proposed articles of incorporation will best present the question for consideration.

The articles are styled, "Charter of incorporation of Laurel Gravel Company." Section 1 declares the purposes are to purchase and operate a gravel pit or pits and do a general mercantile and manufacturing business. Section 4 provides that the Laurel gravel pit corporation may acquire and operate saw and planing mills, own and operate electric light plants, build and own hotels, may purchase, hold and deal in the stock or shares of any incorporation organized under the laws of the United States or of any of the several states of the union, provided such corporation is not a competitor with it in business.

That the powers attempted to be lodged in the Laurel Gravel Company would be illegal, if granted, we cannot doubt. They would make it a stupendous monster, capable of swallowing

into its insatiable maw all the mercantile and manufacturing institutions of the entire country, because none of them would be in any competition with it in the gravel business.  Incorporated under chapter 25 of the code of 1892, which precludes the chartering of railroad corporations under it, yet, in direct conflict with § 832, it gives power to the Laurel Gravel Company to purchase and hold the capital stock of every railroad corporation of North America, because no one nor all of these transportation companies would be in competition with its gravel business.

It is a principle of law that a corporation created under the general laws takes its authority from such general laws, and not from the articles of association (*People* v. *Chicago Gas Trust Co.*, 130 Ill. R., 268,), and a corporation created under chapter 25, annotated code 1892, can only exercise the powers prescribed by that chapter.  By that chapter it is clear that every corporation is intended to be a distinct and separate entity, and reading, in the light of our statutes and the principles of common law relating to corporations, the first clause of section 5, chapter 88, acts 1900 (the anti-trust law), we construe it to mean, as therein expressly declared, that no corporation shall directly or indirectly purchase or own the capital stock, or any part thereof, of any other corporation, and that, too, without any question of competition between them.  The question here made was passed upon at the request of the attorney-general.  We assume no authority to pass upon his official opinions.

We approve and commend the advice of the attorney-general as sound, wholesome and patriotic, and

*Affirm the judgment below with costs.*