## WILSON, STATE AUDITOR, *v.* NAYLOR.

[77 South. 606, In Banc.]

PUBLIC LANDS. *Refunds. Defective title. Limitation of actions. Accrual. Code* 1906, *section* 2947.

Under Code 1906, section 2947, providing for a refund of the purchase money where the state has no title to lands sold by it, the right of the patentee to such refund does not accrue, so that the statute of limitations begins to run against him, until the land commissioner cancels the patent and presents the original or a certified copy of the patent marked "canceled" to the auditor, the patentee having the right to depend on the patent until it is canceled. In such case it is not a question of warranty by the state upon which a right of action would accrue immediately to the vendee upon a breach to recover the purchase money. But simply a statutory right to a refund of the purchase money, and in pursuing his remedy the patentee must follow the methods laid down by the very statute which defines his rights.

APPEAL from the circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Mandamus by N. B. Naylor to require Robt. Wilson, State Auditor, to issue a warrant refunding the purchase money for certain land. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Frank Robenson,* for appellant.

The patent was canceled under the provisions of section 2947 of the Code of 1906. In the case at bar the patent was issued in 1900 and the application was made to the Land Commissioner in May, 1917, seventeen years after the issuance of the patent. The state's contention is that appellee was charged with notice through all these years that the title was in the federal government as appeared from the public records in the land office of the federal government, and that on this state of facts the claim for a refund would be barred by the statute of limitations of six years, as provided by section 3097 of the Code.

Appellee's contention is that the statute of limitations does not begin to run in favor of the state until May 29, 1917, as this was the date on which demand could first be made upon the auditor for a warrant.

Section 3096, of the Code is as follows: "Statutes of limitation in civil cases shall not run against the state, or any subdivision or municipal corporation thereof; but all such statutes shall run in favor of the state, the counties, and the municipal corporations therein; and the statute of limitation shall begin to run in favor of the state, the counties, and municipal corporations at the time when the plaintiff first had the right to demand payment of the officer or board authorized to allow or disallow the claim sued upon."

I am of the opinion that the appellee has failed to construe section 3096 in the light of section 2947. Appellee proceeds on the idea that he is the one to make

the demand upon the auditor, and that the cancellation of the patent is a condition precedent for making of this demand by the appellee. I call the court's attention to the pertinent fact that section 2947 of the Code does not provide that the patentee shall make any demand on the auditor at all, but this statute specifically, provides that when the patent shall have been marked canceled that the land commissioner and not the patentee shall take the canceled patent to the auditor, and that the auditor shall issue his warrants in favor of the patentee for the amount paid the state.

The court will understand that the point at issue then is, when the statute began to run, the appellee claiming that it began to run on May 29, 1917, and the state contending that the statute began to run immediately upon receipt of the purchase money by the state of Mississippi.

The only officer that the patentee has anything to do with under sections 3096, and 2947, of the Code is the land commissioner. Section 3096 says, "statutes of limitation shall begin to run in favor of the state, county and municipal corporation at the time when the plaintiff first had the right to demand payment of the officer or board authorized to allow or disallow the claim sued upon." It cannot be controverted that the appellee had seventeen years in which to make demand of the land commissioner to cancel his patent. To demand of the land commissioner is the only demand which the appellee may make under the statutes. The issuance of the warrant is a mere administrative formality as between the land commissioner and the state auditor after the cancellation of the patent, and section 2947 of the Code makes it the duty of the land commissioner to take the necessary steps to procure the issuance of the warrant. It seems clear to me that section 3096, as applicable to section 2947 of the Code, would make the statute of limitations begin to run at the time when the patentee had the right to first make demand of the land commis-

sioner, which is the only demand he can make under the statute.

Where one sells and conveys land owned by the United States and warrants the title, the covenant is broken when made, and a right of action therein accrues at once, which will be barred by the lapse of the statutory period after that time. *Pevey* v. *Jones,* 71 Miss. 647.'

Counsel for appellee rely upon the case of *State ex rel.* v. *Chisago County,* Am. & Eng. Ann. Cases 1912D. 669, 115 Minn. 6, 131 N. W. 792. Counsel has misread this case and has quoted a statute of Minnesota as the opinion of the court. However, I have no fault to find with the decision in that case. In that case the court expressly said "within what time a person claiming such right must make his application is not here involved." In other words, the point at issue in the case at bar, as to when the statute begins to run, was not decided by the Minnesota court. It is clearly distinguishable from the case at bar.

I think that the statute begins to run when the defect in the title is discoverable and this of course, depends upon the facts in each particular case.

*J. R. McDowell,* for appellee.

I think a mere reading of section 3096 of the Code of 1906 will convince the court that the statute of limitations does. not run in cases such as this. Section 3096 is as follows:

"Limitations of suits by and against the state, counties and municipal corporations.—Statutes of limitation in civil cases shall not run against the state, or any subdivision or municipal corporation thereof; but all such statutes shall run in favor of the state, the counties, and the municipal corporations therein; and the statute of limitation shall begin to run in favor of the state, the counties, and the municipal corporations at the time when the plaintiff first had the right to demand payment

of the officer or board authorized to allow or disallow the claim sued upon.''

It is clear that the appellee had no right to demand the refund of the purchase money until his patent had been canceled. His patent was not canceled until 1917, as will be seen by reference to the patent, which is brought up as an exhibit. His "right to demand payment of the officer or board authorized to allow or disallow the claim sued upon," therefore not having accrued until 1917, the statute of limitations did not begin to run until that right accrued, which was after the patent had been canceled. The attorney-general contended that the statute began to run against him as soon as the patent was issued because he could have investigated the records in the United States land office, and by so doing could have become acquainted with the facts that the state did not have title to the land which it had just conveyed to him by patent. I think this is clearly a misconception of the statute and of the law on this subject. It was never intended that the state should hold itself out to the public as the owner of lands, take their money and then plead the statute of limitations at some future date, when the patentee discovered that the state never had title to the land it had conveyed him.

The statute should be strictly construed, so that it should begin to run when the cause of action accrues. The cause of action does not accrue until the right to make demand accrues, and the right to make demand does not exist until the patent has been canceled, and the land commissioner did not cancel the patent until advised by the attorney-general that the state had no title. This was done in 1917. "Until a judgment turned a contingency into a certainty the statute did not begin to run." *Swing* v. *Brister* 87 Miss. 516.

I find the following case which seems to cover the case at bar like a blanket. *State ex rel.* v. *Chisago Co.,* Am.

& Eng. Ann. Cases 1912D, 669; 115 Minn. 6; 131 N. W. 792.

"The statute of limitations upon an implied warranty of title to chattels held by one in possession does not commence to run until the vendee is disturbed in his possession by the owner." *Goss* v. *Kierski,* 41 Cal. 111. See, also *Ripley* v. *Withell,* 27 Tex. 14 *Anding* v. *Perkins,* 29 Tex. 348; *Coplinger* v. *Vaden,* 5 Hump. (Tenn.) 629.

The appellant seemed to rely upon the case of *Pevey* v. *Jones,* 71 Miss. 648, but the court will see that that case is between two individuals, and under the law there is a different provision about the running of statutes of limitation in favor of the "state, the counties and the municipal corporation therein," which is provided for exclusively by section 3096, and, therefore, the case relied on by appellant has no bearing on the instant case. Section 3096 controls the instant case, and no other statute of limitations of three years, six years, or any other statute of limitation controls here.

The learned court below correctly decided the case, and the judgment should, therefore, be affirmed.

*Baskin & Wilbourn,* for appellee.

The assistant attorney-general thinks the statute of limitations began to run when the defect in the title was discoverable. This cannot be, for a number of reasons. In the first place, the whole contemplation of the statute negatives such an idea; in the second place, there was no right to sue for the refund of the money when the defect in the title was actually discovered. If the actual discovery of the defect in the title could not set in motion the statute of limitations, because it did not give any right to sue for the refund of the money, then we cannot conceive how it can be said the statute began to run when it might have been discovered that the title was defective.

Section 2947 of the Code of 1906, clearly indicates the will of the legislature that a patent should be canceled by and in the manner set forth in section 2947, whenever at any time the land commissioner discovered that the state did not have title to the land when it sold it.

The opinion rendered to the auditor by the attorney-general, Hudson, referred to in the brief of the assistant attorney-general, for the state in the present case, is, we respectfully submit, not well founded. The right to demand payment of the officer authorized to allow or disallow a claim sued upon did not arise in this case immediately upon the purchase of the property. There was never any right to demand payment until the cancellation of the patent had been accomplished by the act of the land commissioner and the land commissioner had presented the canceled patent to the state auditor. Then and then only did the right to demand payment arise. All prior to that time the purchaser from the state and his assignees had a *prima-facie* title from the state upon which they had a right to rely and had been in possession of the property with an unchallenged title until shortly before May 29, 1917, and could not have demanded payment of any officer whatsoever of any amount of money whatsoever, and had no right to maintain any suit for the recovery of any money whatsoever, prior to May 29, 1917.

We think that the assistant attorney-general, and any other attorney-general who may have ruled that the statute of limitations barred such a claim as this, under the facts of this particular claim, has misconceived the purpose and intent of the legislature.

We, therefore, respectfully submit that this case ought to be affirmed.

STEVENS, J., delivered the opinion of the court.

Appellee filed a mandamus suit against the state auditor to require the issuance of a warrant refunding the

purchase money for certain land purchased from the
state. It appears that one W. T. Keeton purchased
eighty acres of land from the state in March 1900, and
received a patent therefor. In 1905 appellee purchased
the land from Keeton and in May, 1917, appellee re-
quested the land commissioner to investigate and cancel
the state's title to said land because it appeared that
the title was in the United States government. The
land commissioner investigated the title, referred the
matter to the attorney-general in accordance with the
method provided by statute, and the attorney-general
rendered an opinion to the land commissioner to the effect
that the state had no title. Appellee then demanded
from the auditor the issuance of a warrant in accordance
with the provisions of section 2947, Code 1906. This
statute reads:

"Patents Canceled Where State has no Title.— . . .
If the state of Mississippi, through the auditor or land
commissioner's office, has heretofore issued, or shall
hereafter issue, a patent or patents for any lands to
which the state holds no title, or which did not belong
to it at the time of the issuance of such patent or pat-
ents, or any part of which land may have caved into
the river before the issuance of such patent or patents,
or by oversight or otherwise two patents may have been,
or may hereafter be, issued therefor, the land commis-
sioner shall investigate the case and report to the attor-
ney-general, who, if he shall find the lands so patented
did not belong to the state, shall so report to the land
commissioner, and if the land commissioner shall find
that such lands or any part thereof had caved into the
river before the issuance of such patent, or that the
patentee did not acquire any land or title under such
patent he shall mark such patent or patents, or in case
of loss of the original, the certified copy of such patents,
'canceled,' and take them, or a duly certified copy, to
the auditor of public accounts, who shall file the same
as a voucher in his office, and shall issue his warrant

in favor of the patentee or his or her assignees, heirs, or representatives, for the amount paid the state for such canceled patent or patents, and the land commissioner shall certify all such cancellations to the clerk of the chancery court of the county in which said patents have been recorded, who shall thereupon cancel the record of it. When only a part of the purchase money is refunded it shall be first noted by the land commissioner in ink across the face of such patent and noted by the chancery clerk upon the record of patent canceling it in such proportion only.''

The auditor, acting under legal advice, declined to issue a warrant, contending that under section 3096, Code 1906 (section 2460 Hemingway's Code), the statute of limitations operated in favor of the state and barred appellee's right to a refund. Then it was that appellee filed his petition for a mandamus to compel the issuance of the warrant. The circuit court rendered a judgment in favor of appellee, and from this judgment the state prosecutes an appeal.

It is conceded that statutes of limitation in civil cases run in favor of the state, and that they begin to run "when the plaintiff first had the right to demand of the officer or board authorized to allow or disallow the claim sued upon." But the statute (section 3096, Code 1906) has not barred appellee's right in the present case because the land commissioner, under the advice of the attorney-general, did not cancel the patent until May, 1917, and the right of Mr. Naylor to a refund of the purchase money did not accrue until the land commissioner canceled the patent and presented the original or a certified copy of the patent marked ''Canceled'' to the auditor. Under the statute the auditor is powerless to act until he is presented with the canceled patent, and then for the first time he has the right to issue a warrant in favor of the patentee or his assignee, heirs, or representatives, for the amount of the purchase money. There can be no cancellation under this statute until the

attorney-general and the land commissioner find "that the patentee did not acquire any land or title under such patent," and no warrant can issue until the canceled patent or a certified copy thereof is presented to the auditor of public accounts. This is the method plainly outlined by the statute itself. Without this statute appellee would not be entitled to a warrant in the present case. There is a method outlined by section 2927, Code 1906, providing that the state shall refund the purchase money to its vendee or his heirs or assigns where the title to land sold by the state has failed, "but the question of failure of title can only be determined, except as hereinafter provided, in a suit filed in the county in which the land is situated, and the land commissioner shall be made a party to every such suit." The rights of appellee are not based upon section 2927, and are not attempted to be based upon that statute. The sole reliance here is upon section 2947, which may be termed a refunding statute, a summary proceeding for the cancellation of patents where the state's title is obviously bad, and the state in this summary proceeding relies upon the good judgment of the land commissioner and the legal advice of the attorney-general. There is no dispute about the facts of the present case. It is manifest that appellee's "right to demand payment of the officer," in this case the state auditor, did not accrue until May, 1917, and that the statute of limitations could not begin to run until that right had accrued. Of course, the cause of action here was not available until the right to demand the warrant accrued, and this right was first brought into existence by the cancellation of the patent. It was said in *Swing* v. *Brister,* 87 Miss. 516, 40 So. 146, 6 Ann. Cas. 740, that until a judgment turned a contingency into a certainty the statute did not begin to run. So here, until the cancellation of the patent turned a contingency into a certainty the statute did not begin to run.

But it is contended that under the holding of *Pevey* v. *Jones,* 71 Miss. 647, 16 So. 252, 42 Am. St. Rep. 486, where one conveys land owned by the United States and warrants the title, the convenants are broken immediately. upon the execution and delivery of the deed, and that the right of action at once accrues to the vendee to recover the purchase money. *Pevey* v. *Jones* has no application to the question here under consideration. This is not an action upon the covenants contained in the deed. The state has not warranted the title, and is not here sued upon its warranty. Appellee is only claiming a statutory right to a refund of the purchase money, and in pursuing his remedy follows the method laid down by the very statute which defines his rights. The right and the remedy are both provided by the statute under review. The case of *Pevey* v. *Jones* was an action between two individuals. Here the sovereign state is dealing with one of its own citizens.

The case of *State ex rel.* v. *Chisago County,* 115 Minn. 6, 131 N. W. 792, Ann. Cas. 1912D, 669, supports appellee's contentions. That was a proceeding by mandamus to compel the refund of taxes paid by a holder of a void tax title. It is there held that:

"The holder of a tax certificate is not bound to assume or determine that his title is invalid. It carries the inference of validity. . . . If the rule were as claimed, the holder of a tax certificate, instead of resting on its presumed validity, would be bound to examine each step in the tax proceeding in the light of each decision of the supreme court, and determine at his peril, if within the principles of any decision his tax title. is void. . . . The state holds out an inducement to purchasers at such tax sales and payment of subsequent taxes that there shall be acquired a title to such land, and the right to receive back the money paid and interest, should the tax title be declared void."

And cannot it be said here that the holder of a title conveyed by the state might well be ignorant of any

infirmity in the title and indeed might be ignorant of
the fact that the paramount title was outstanding in the
United States?  The state assumes to convey a good
title to its citizens—perhaps in many instances not
conversant with land titles or the law in reference there-
to; and should not the patentees rest in confidence upon
the state's patent until that patent has been declared
void or canceled?  Any other view would put the state
in the attitude of holding itself out as the owner of
lands, of taking the purchase money from the state's
vendees, and then at some remote period of denying the
patentee's right to recover back the purchase money
solely because the latter has not sooner attacked his own
title.  The holder of the state's patent might be in pos-
session, using and enjoying the premises.  Surely he is
not expected to trade for the land one minute and sue
the state the next.

The case of *Brown, Land Commissioner,* v.  *Ford,* 112
Miss. 678, 73 So. 722, foreshadows the views now an-
nounced.  In speaking of the right to sue for recovery
of the purchase money, we then said:

"If the auditor should refuse to issue a warrant in
payment of the claim thus presented (a decree of the
court canceling the state's title), then, and not until
then, could appellees, under section 4800 of the Code,
institute a suit against the state."

*Affirmed.*

Cook, J., dissents.


Etheridge, J. (dissenting).  In my opinion, under sec-
tion 2947, Code 1906 (Hemingway's Code, section 5282),
the applicant could have filed his claim for a cancellation
and refund immediately upon the passage of this statute
in the year 1904.  The patent had been outstanding
since March, 1900, and certainly that was sufficient
time for the applicant to have determined the *status* of
his title acquired from the state.  The claim as now
presented was filed by the applicant, and did not accrue

by the land commissioner on his own initiative striking the land from the roll and canceling the patent. All rights under the law may be enforced in the manner pointed out by the law by the person in whom the right exists. It has never been the practice, and certainly it could not be construed to be the law, that the applicant had no right to make the demand for the cancellation. If that be the law, then the applicant has no right here because this proceeding was set in motion on his petition. Section 3096, Code 1906 (section 2460 of Hemingway's Code), reads as follows:

"Limitations of Suits by and against the State, Counties and Municipal Corporations.—Statutes of limitation in civil cases shall not run against the state, or any subdivision or municipal corporation thereof; but all such statutes shall run in favor of the state, the counties, and the municipal corporations therein; and the statutes of limitations shall begin to run in favor of the state, the counties, and municipal corporations at the time when the plaintiff first had the right to demand payment of the officer or board authorized to allow or disallow the claim sued upon."

Under the very terms of this statute the statute of limitations shall begin to run in favor of the state when the party first had the right to demand payment. The question then arises as to when in the present case could the applicant or appellee have first demanded payment. In *Pevey* v. *Jones,* 71 Miss. 647, 16 So. 252, 42 Am. St. Rep. 486, Judge CAMPBELL, speaking for the court, used the following language:

"As to the land belonging to the United States, the covenant of warranty was broken the instant it was made, and a right of action on it then accrued, and was barred when this action was commenced. The true doctrine is that the United States are always seised of their lands, and cannot be disseised as private owners may be; that land belonging to the United States cannot lawfully be the subject of sale and conveyance by individuals,

so as to confer any right; that a grantee of such land by another than the United States cannot take possession without becoming a wrongdoer, and liable to summary ejection; and, therefore, that a covenant of warranty, in a conveyance of land belonging to the United States, must be viewed differently from one where the ownership is by a private person; that the grantee is not required to take possession, or attempt to get it, and that a right of action immediately accrues to recover for a breach of warranty, not dependent on any future event, but fixed by the fact of ownership of the land by the government. In this case, the grantee acquired nothing whatever as to the land owned by the United States; and, by virtue of the transaction, his vendor, on receipt of the purchase money, thereby at once became liable to him for money received to his use. We are not aware of any direct authority for this view, but it seems to result necessarily from what is well settled, and we do not hesitate to make a precedent so fully supported by reason.''

It will be seen from the reasoning of this case that the rule is that where title to land is in the United States government there can be no rightful occupancy by any one else without the consent of the United States, and that for that reason the grantee is disseised of possession and his rights accrue at once. It is difficult for me to comprehend any difference between the right when the state is a party and when the individual is a party. The state had no more right to make a conveyance than an individual did where the title of land is in the United States government and when the party paid a consideration for this deed which the state had no right to make he had a right at least in a reasonable time to make demand for repayment. It was his duty to investigate his title as speedily as a reasonably prudent man would be required to do in the case of individuals. While the state's deed is not in terms a warranty, yet by reason of the statute involved here it is in effect a warranty to

the extent of repaying the purchase money. In legal effect the state does warrant its title to this extent. It seems that there is a disposition or tendency to try to class the state differently from individuals, and a belief that the state is a proper subject for spoliation at the hands of any private person. The state is the people in a collective sense, and its right should be no less respected than the rights of an individual. Indeed, there is reason for believing that the state's right should be more tenderly regarded because of its incapacity to exercise the same vigilance that an individual would exercise. I see no reason why the rule here would apply to claims against a county because under the statute no suit can be brought until a claim is first presented for allowance to the board of supervisors, and it can as readily be said that no right of action accrued until the board declined to pay the claim. Section 3096 Code 1906 (section 2460 of Hemingway's Code) was enacted for the very purpose of preventing a party having a claim against the state, county, or municipality from keeping it until the facts might become doubtful or incapable of proof, and was designed to make parties having claims diligent in presenting them for payment so that the state, county, or municipality would know how to conduct its business. The case of *State* v. *Chisago County,* 115 Minn. 6, 131 N. W. 792, Ann. Cas. 1912D, 669, cited by the majority as a precedent, recognizes the duty of the holder of a claim to present his application for a refund within a reasonable time. The court uses this language:

"If he does determine that it is invalid, and claims a refundment under a particular decision, he is bound to make a timely assertion of his right. Within what time a person claiming such right must make his application is not here involved."

The decision of *Pevey* v. *Jones,* 71 Miss. 647, 16 So. 252, 42 Am. St. Rep. 486, was decided at the October term, 1893, long before the purchaser from the state

made his purchase, and under this case at the time he made the purchase he was bound to know that if the lands were in the United States he must make application speedily. The attorney-general's department has for many years, and certainly from 1908 to date, applied the statute of limitation to these claims, and as the attorney-general is the advisor of the administrative departments under the law, this construction should not be departed from unless manifestly wrong, and I do not believe it is manifestly wrong, but, on the contrary, that it is manifestly right.