STATE *v.* SOUTHERN PINE COMPANY et al.

In Banc. Jan. 24, 1949.

(38 So. (2d) 442)

**Jno. E. Stone,** Assistant Attorney General, for appellant.

Hathorn & Hathorn, Satterfield, Ewing & Hedgepeth, Dent, Robinson & Ward, and Williams & Williams, for appellees.

**Smith, J.**

This novel case was appealed by the State of Mississippi from a decree of the Chancery Court of Marion

County, overruling its two demurrers to the original bill of appellees. The purpose of the suit was to have the trial court to grant appellees, as complainants, a decree "declaring all of said pretended assessments and pretended tax sales of lands in the NE¼ of SW¼ of Section 24, Township 2, Range 13, in Marion County, Mississippi, to be null and void, and cancelling whatever title. or claim of title the State of Mississippi may have to the land in suit by virtue of said pretended tax sales, as a cloud upon the true title of complainants to the land in suit." The State was the defendant.

The Southern Pine Company was averred to be the owner of the land involved, when it was assessed and sold for taxes. The original bill contained a deraignment of title, and a full exposition of the interest of the other complainants in the suit, into which it is not necessary to go. The lands were attempted to be sold to the State. The assessment and sale thereof are attacked on many grounds by the original bill. There is no necessity for discussion of any of them except those with which we deal, post.

The original bill avers that the description of certain small tracts of the lands involved was so indefinite and uncertain as to make their sale void. The bill sets forth that the Land Commissioner, with the written approval of the Attorney General, in accordance with the statute, erased and struck such lands from the list of lands sold the State of Mississippi, and from the records of title in his office, because the State had acquired no title thereto; that he transmitted this list to the Chancery Clerk of Marion County, who noted the same on the proper records in his office; all in accordance with the statute. It is averred, thereafter the lands were assessed and taxes thereon paid.

The State of Mississippi filed the usual general demurrer in chancery, that there is no equity on the face of the bill. It filed also a special demurrer, on several grounds, —among them being that the original bill did not set out

any title or claim to title in the State of Mississippi; that the State of Mississippi, through its Land Commissioner and Attorney General, had stricken the sales on which suit was brought, and therefore had no title to said lands. Both demurrers were overruled, answer filed, proof heard, and a final decree entered. The court therein adjudged the sales for delinquent taxes to be void and "no title to or interest in the land in suit . . . was vested in the State of Mississippi under and by virtue of said tax sale; but said tax sale and the record thereof casts a cloud on the true title of complainants to the land in suit, and the same is hereby cancelled as a cloud on the title of complainants to the land in suit."

It is to be noted that the act of the Land Commissioner and the Attorney General, in striking the sales from the list of lands of which the State claimed ownership, was ignored in the final decree. It is also to be observed that the Land Commissioner, with the written approval of the Attorney General, had stricken the lands because the sales were void. Thus, the court reviewed the statutory action of the State's officials charged with the duty of disencumbering the State of lands to which it had no title, and decreed the same thing already done by the Land Commissioner on the advice of the Attorney General.

 We think the chancery court then was without jurisdiction in this case, since, even though the prayer of the bill was for the removal of a cloud, the adjudication sought was, in effect, merely ratification of the legal action of a State official, lawfully empowered to act, and the statute does not provide for the ratification thereof by any court. The statute is a salutary one. It deters tyrannical oppression by the sovereign state in persisting to claim rights it does not rightfully or legally own; it prevents harassment of busy state officials by averting useless litigation; it saves the perpetuating of futile records of non-existing state titles to land; and the expense to the State of officials' attendance upon courts in such cases

as the one here under review. It is fair to the taxpayer and works no harm to the State. It also puts the land back on the tax rolls, from which revenue may be derived in the form of taxes, as occurred in the case at bar.

That is, unless the statutes are unconstitutional, which attack is made upon them by appellees. Laying aside the debatable question of their right to raise that question in this case, we address ourselves to it at this point.

Section 4073, Code 1942, which brings forward Chapter 174, Laws of 1936, reads as follows: "In all cases where it appears that the claim of title of the State to the lands on the records of the land office was acquired under tax sales which were void and which passed no title to the State, the Land Commissioner, with the written approval of the Attorney-General, is hereby authorized and directed to strike such lands from the lists of lands sold to the State for delinquent taxes, in his office, and the Land Commissioner shall transmit a list of the lands thus stricken from the records of forfeited State tax lands in his office to the clerk of the chancery court of the county in which such lands are situated, and the clerk of the chancery court shall note the same on the recorded lists in his office and shall file and preserve the list of lands thus stricken from the records in his office. The Land Commissioner shall at the same time give written notice to the assessor of the county that such lands have been stricken from the lists of lands held by the State for the non-payment of taxes, and it shall be the duty of the assessor to assess such lands for taxes for the proper year or years at such valuation as the assessor may deem just. Such assessment shall be made in the manner provided by law for the assessment of property which has escaped taxation for former years. And the tax collector shall collect the taxes on such lands in the manner provided by law. The striking of such lands from the lists of forfeited State tax lands in the Land Commissioner's office, as herein provided for, shall cancel all title or claim

of the State to such lands, except for taxes due thereon at the time of the sale and accruing after the sale."

Attention is especially directed to this concluding clause of the foregoing statute: "The striking of such lands from the lists of forfeited State tax lands in the Land Commissioner's office, as herein provided for, shall cancel all title or claim of the State to such lands, except for taxes due thereon at the time of the sale and accruing after the sale." Two things are notable here. One, that this act of the Land Commissioner cancelled "title or claim of the State to such lands"; and the final decree of the court "cancelled as a cloud on the title" that which, by express statutory authority, had already been cancelled, and hence no longer existed, unless the statutes be unconstitutional. The other significant matter, to which we refer, is "except for taxes due thereon at the time of the sale and accruing after the sale." In other words, in striking lands from the list of State-owned lands, under the statute, the tax lien is retained. Appellees contend that such striking donates the lands to the original owners, but this is untrue, since while the absence of title in the State is recognized, the tax lien is retained.

In connection with this statute, and as illuminative of the general legislative program in such matters, and of the public policy of our State, it is interesting to consider, although we do not discuss them further, the following additional statutes: Chapter 235, Laws 1942, now Section 4144, Code 1942; Chapter 235, Laws 1942, Section 4145, Code 1942; Chapter 174, Laws of 1936, Section 4077, Code 1942; and House Bill 910, Chapter 491, Laws 1948.

The demurrers admit the facts averred in the original bill, and such averments are ample and sufficient to set forth factually all that is necessary to present the issues to us, on the challenge of the demurrers. To the bill and demurrers only, therefore, we look. White, et al. v. Turner, et al., 197 Miss. 265, 19 So. (2d) 825.

The position of the appellees, which the chancellor was persuaded was correct, is thus stated in their brief: "In our opinion the striking of all such sales is ineffective, and they remain as clouds upon the title of the original owners of the lands until their invalidity has been judicially determined. We agree with the Attorney General that the Legislature intended for the administrative striking of tax sales, when done in good faith to be binding on the State; and we should not be averse to see a decision in this case so holding; but we cannot see how such a decision can be made in the face of the constitutional prohibitions heretofore mentioned, unless the court finds and holds that a donation is avoided by reason of the reinstatement of the State's tax lien against the lands upon the striking, as suggested by the Attorney General."

The position of the appellant, State of Mississippi, is stated in its brief to be: "under the statutes the Land Commissioner with the advice and consent of the Attorney General, may strike from the records of the Land Office tax sales which, in his estimation are void, and that so long as said striking is made without fraud and made in good faith, that it is binding upon the State of Mississippi and relinquishes all right and title which the State has in the property covered by the tax sale. In short, it is the contention of the appellant, State of Mississippi, that the striking of a tax sale destroys the muniment of title of the State, but that the lien for taxes remains."

The constitutional prohibitions upon which appellees seem to rely and to have had in mind, and to which reference was made, when preparing their brief, are: (1) Section 95 of the Constitution of 1890, which reads: "Lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies"; (2) Section 144, "The judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this constitution"; (3) Section 173, "There shall be an attorney-general elected at the same

time and in the same manner as the governor is elected, whose term of office shall be four years and whose compensation shall be fixed by law. The qualifications for the attorney-general shall be the same as herein prescribed for judges of the circuit and chancery courts''; (4) Section 2, ''No person or collection of persons, being one or belonging to one of these departments shall exercise any power properly belonging to either of the others''. (5) 90(u), ''The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: . . . (u) Granting any lands under control of the State to any person or corporation.''

This matter is not altogether a stranger to the decisions of this Court. In Wilson, State Auditor, v. Naylor, 116 Miss. 573, 77 So. 606, 607, we quoted the statute involved there, and in the course of our opinion said: ''But the statute (section 3096, Code 1906) has not barred appellee's right in the present case because the land commissioner, under the advice of the Attorney General, did not cancel the patent until May, 1917, and the right of Mr. Naylor to a refund of the purchase money did not accrue until the land commissioner canceled the patent and presented the original or a certified copy of the patent marked 'Canceled' to the auditor.''

The case on which appellees seem to rely most confidently is, on close analysis, of doubtful, if any, value in their behalf. It was a case of demurrer also, as the case at bar, but the opinion states: ''There is no fact alleged in the bill of complaint which would make void the tax of July 6, 1868, even when confessed on demurrer.'' Such is not the situation here, as the instant bill sets it all out in full. But the reliance of appellees on the case is to support their contention that we are confronted here by an unconstitutional donation. In the cited case the Legislature, we there held, donated State lands to particular individuals. We further said, referring to the

Act of the Legislature there discussed: "Section 1 provides that all lands struck off to the state prior to 1875 for delinquent taxes, and which were not embraced in the list returned that year to the Auditor under the abatement act, and which have not previously and validly been disposed of by the State of Mississippi, and which are now in the possession, actual or constructive, of bona fide owners, and legally assessed for taxes as required by law, are hereby relinquished to those persons who, but for the sale or sales, would now be lawfully and equitably the owners thereof." The Court further said that the alleged objectionable circumstances "would not warrant a holding that the tax title was void, even when confessed by demurrer, as those acts did not in any way cancel tax sales which were not listed in compliance with the acts, unless such lands were omitted by and with the advice of the Attorney General, as required in section 2 of the act of 1880, and the bill does not so allege." Winton v. Day, 96 Miss. 1; 49 So. 264, 265. It is always to be remembered that the State retained its tax lien on the lands in the case at bar. It did not do so in the cited case. We do not agree that the statute authorizes a donation of the State's lands.

 The State never owned these lands, and this is agreed by all parties hereto. Hence it had no right to control them, and, therefore, could not, and hence did not, donate them by the statutory denunciation and renunciation of title thereto, retaining the basic tax lien. A donation has been described as "The act or contract by which a person voluntarily transfers the title to a thing of which he is the owner, from himself to another, without any consideration, as a free gift." Sunderstrom v. Village of Oak Park et al., 374 Ill. 632, 30 N E. (2d) 58, 62, 131 A. L. R. 1465. So, we see no donation in the instant case, as stated supra.

 We do not think the statute is void as violative of the constitutional section prohibiting special, local or private laws, ante. It applies uniformly to all persons

similarly situated throughout the State as well as all sales of the same nature, for delinquent taxes. 50 Am. Jur., Statutes, page 24, Sec. 8; Ibidem, page 28, Section 12; Ib., page 21, Section 7; Beall v. Board of Supervisors, Warren County, 191 Miss. 470, 3 So. (2d) 839, 844; and City of Jackson v. Deposit Guaranty Bank & Tr. Company, 160 Miss. 752, 133 So. 195, 197, wherein we said: "A law is general in the sense of such a constitutional provision when it applies to and operates uniformly on all members of any class of persons, places, or things requiring legislation peculiar to the particular class dealt with by the law." We do not agree that the statute is "special, local, or private." It is general, and, therefore, does not violate the 1890 Constitution of Mississippi.

 █ Neither are we of the opinion that the Legislature transcended its powers or violated Sections 144 or 2 of the State Constitution, or that the result of the statute is to empower the Attorney General to usurp the function of the courts or to act judicially, as contended by appellees, and held by the learned chancellor. In Pearl River County v. Lacey Lbr. Co., 124 Miss. 85, 109, 86 So. 755, 757, it was said: "We do not think that the auditor and the Attorney General in acting under section 4346, Code of 1906 (Hemingway's Code, Sec. 6980), acted judicially, nor is a judicial proceeding necessary to authorize the allowance of money out of a public treasury or a public fund. The scheme provided in that section is an easy method of refunding to the taxpayer moneys which have been paid erroneously into the treasury." In the present case now before us, the statutory scheme provides an easy way to avoid and make unnecessary, indeed improper, a suit to cancel, as a cloud, a non-existing claim of title.

In Selig v. Price, 167 Miss. 612, 618, 142 So. 504, 505, we said: "By section 3276, Code 1930, the Attorney General is required, when a claim is presented to him under it, to examine in to the merits of the claim, and determine whether it is a meritorious or legal claim. In this he

exercises his discretion, depending, of course, upon the findings of fact made by him in his investigation." See also Woodberry v. McClurg, Attorney General, 78. Miss. 831, 29 So. 514, and others cited in the Selig case, supra. We are of the opinion that the attorney general was performing a constitutional duty of his office, whereby his legal learning and discretionary opinion were legally made available to the proper State officer in the exercise of a State function for which the Legislature should have provided, and did provide, a necessary agency of the State to act in a matter of public policy, wise from any point of view. We do not think the Attorney General exercised any judicial functions, but that he was called upon to exercise only judicious discretion.

In view of what we have said, ante, we hold that the demurrers should have been sustained, and since all of the necessary facts are fully and completely averred in the original bill, and admitted by the demurrers, we reverse the judgment of the chancery court and dismiss the original bill, and enter a decree in favor of appellant, State of Mississippi.

Reversed and decree for appellant.

**Hall, J.,** took no part in this decision.

**Roberds,** Justice (dissenting).

The procedure and result in this case constitute a contradiction in terms. Here complainants assert ownership of land and attack as a cloud upon their title a tax sale to the State which the Land Commissioner struck from the rolls under instructions of the Attorney General. The State is party defendant. The State, through its pleadings, asserts it has no interest in the land. By special demurrer it says the land had been stricken from the tax rolls "and the State of Mississippi therefore has no title in said land". By general

demurrer it admits the title of complainants. By answer it "neither admits nor denies" the averments of the bill, which under our pleadings, is an admission of the averments properly stated. In other words, by answer and special demurrer the State disclaims any interest in the subject matter of the litigation, yet, at the same time, by general demurrer, reciting only "There is no equity on the face of the bill", it undertakes to contest the title of complainants, although the general demurrer admits the asserted title. The Chancellor overruled both demurrers and found that complainants did have good title; that the tax sale constituted a cloud on that title and removed that cloud. Here we have a defendant disclaiming any interest in the subject matter whatsoever, appealing the case to this Court and obtaining a judgment reversing the holding of the court below and rendering judgment for the State, which itself says it has no interest in or claim whatever to the land. That would seem to be an anomaly in judicial procedure. Who now has title to the land? What kind of a judgment is to be entered? The whole crazy-quilt situation arises from two causes: The first is the failure of the State simply to file a disclaimer of any interest in the subject matter, without undertaking at the same time to contest the claim of complainants. The second is the erroneous assumption that because a tax sale of land may not be legal, either on its face or upon judicial determination after contest, such sale does not constitute a cloud upon the title of the owner. The Supreme Court of the United States in the case of L. & N. Railway Co. v. Western Union Tel. Co., 234 U. S. 369, 34 S. Ct. 810, 813, 58 L. Ed. 1356, construing Section 1324, Code 1942, providing for removal of clouds upon titles, after reviewing the Mississippi cases passing upon the right and propriety of suits under that Section, summed up the question in these words: "In view of these decisions, we think the statute must be regarded as entitling the rightful owner of real property in the state to maintain a suit to dispel

a cloud cast upon his title by an invalid deed or other instrument, even though it be one which, when tested by applicable legal principles, is void upon its face.'' The grantee does not have to make claim to the property. It is enough to enable the true owner to maintain a suit to remove the cloud that the deed or instrument cast a cloud on that title. Such a cloud may, and usually does, adversely affect the ownership, use and sale value of the property. That is especially true of tax sales. There are thousands of acres of land in Mississippi in the same situation as the lands involved in this litigation. The owners thereof have no way of removing as burdens upon their true titles the clouds cast thereon by tax sales of the character here involved. All the State need do to have their bills dismissed is to follow the unheard-of procedure adopted in this case.