## Horton *v.* King *et al.*

[73 South. 871—71 South. 9, *In banc.*]

STATUTES. *Local laws. Assessment of taxes. Validity of statutes.*

Section 1, chapter 239, Laws 1908, authorizing the supervisors of Lincoln county in its discretion at its regular meeting of that year, to order an assessment of the lands therein to be in lieu of the last assessment thereof, is a special and local law and violates section 112 of the Constitution of 1890, requiring that taxation shall be uniform and equal throughout the state and that property shall be assessed for taxes under general laws and by uniform rules.

APPEAL from the chancery court of Lincoln county. HON. G. G. LYLE, Chancellor.

On rehearing, Judgment in division reversed and judgment below affirmed. For former opinion see 110 Miss. 859.

The facts are fully stated in the opinion of the court.

*H. H. Creekmore,* for appellant.

Appellee in his brief has re-constructed sections 90 and 112 of the Constitution and has suggested an amendment adding a new paragraph to section 10 to be known as paragraph "V" to the effect that the prohibition of section 10 shall apply to laws "providing for purposes of general revenue. We must take the constitution as written and not as it might have been written. Section 90 deals with one thing and section 112 with an entirely different thing. Section 112 among other things provides that property shall be assessed for taxes according to general laws and by uniform rules according to its value. The Act of 1908 provides that the lands of Lincoln county shall be assessed for taxes under the general law and by uniform rules and only makes provision for the assessment to be ordered in April instead of July or August. It is to be observed under this act that the only difference is that the assessment shall be ordered in April instead of being ordered in July or August, and the assessment when ordered shall be made by the assessor complying in all respects with the law governing general land assessments in this state. The law further provides in section 2 that upon the return of the assessment at the time and in the manner required by law for regular land assessments the board of supervisors shall perform all duties at the time and in the manner required by law for regular land asessments; the board of supervisors shall perform all duties at the time and in the manner and form as prescribed by law for general land assessments. Under this statute while the assessment was ordered at the April meeting instead of the July or August meeting, the approval of the roll was to be made at the same time and in the same manner as if it had been ordered made under the general law and at this time, identical with the time fixed by the general law, all objections to the roll could legally be heard and any inequalities

in the roll could legally have been corrected. When
this equalization of the roll was being had all fluctua-
tions of value caused by financial conditions could have
been adjusted, and a full and complete remedy was open
to the tax-payers; and therefore the valuation under
the law could have been and presumably was in effect
uniform and on the same basis in so far as they were
influenced by general prevailing conditions. I think the
law provided a remedy to meet the result complained of
in appellee's brief to the effect that it would result in
an unequal burden to have the assessment made in one
section of the state in times of financial stress and have
the assessment in another section of the state under
improved conditions. In short, the final approval of the
roll under the general rule and under the Act of 1908
was to take place at the same time.

I have read the Mississippi cases cited in appellee's
brief and as I conceive the points raised in the case at
bar, none of these cases touch the question, and I sub-
mit the case on the points raised in the court below
without further comment.

*Jones & Tyler,* for appellee.

The act is unconstitutional and void because it con-
flicts with section 112 of the Constitution of 1890, from
which we quote the following: ''Taxation shall be uni-
form and equal throughout the state. Property shall
be taxed in proportion to its value—property shall be
assessed for taxes under general laws and by uniform
rules according to its true value.''

It was conceded by appellant in his brief that ''if the
Act of 1908, chapter 239, is unconstitutional, then the
assessment made thereunder in the year 1908 is void
and will not uphold the tax title in controversy here.
In other words, the sole question that the appellant pre-
sents is the constitutionality of the act of 1908 found on
page 230 thereof.'' In view of this concession, it will
not be our purpose to discuss any other question that

might arise in connection with the case. If the Act of 1908 is unconstitutional, the assessment and sale made thereunder are void. *Hawkins* v. *Mangum,* 78 Miss. 97; *Coffee* v. *Coleman,* 85 Miss. 14; *Scarborough* v. *Elmer,* 87 Miss. 508; *Virden* v. *Bowers,* 55 Miss. 1.

Section 87 of the Constitution of 1890, provides that in all cases where a general law can be made applicable and would be advantageous, no special law shall be enacted. It cannot be contended that the situation in Lincoln county was one that could not be provided for by general law, because the legislature had enacted general statutes under which this very contingency was provided for, these statutes being sections 4299, 4300, 4301, of the Code.

It is a case where no legislation at all was needed, neither a special, nor a general law. If any were needed by this section of the Constitution, it could only be provided for by general laws and none was needed in this instance because provision had already been made by general laws. The act not only violates the policy of the state on this subject as outlined by this section of the Constitution, but it is further objectionable for the reason that it' undertakes to amend a general law by a special act in that it substitutes for the opinion of the board of supervisors, as provided for by section 4299, the judgment and opinion of the legislature. In other words, by section 4299 of the Code where, in the opinion of the board of supervisors, an assessment of lands is erroneous and imperfect so as to cause inconvenience, unnecessary trouble, or to entail financial loss to the tax-payers of the county, the board may order a reassessment. Under the Law of 1908, the legislature proceeds to adjudicate the matter which is left by the general laws to the local authorities which is in accordance with the general policies of our law, and the legislature proceeds to adjudge and determine that the land assessment of Lincoln county is erroneous and imperfect.

The policy of our Constitution makers as shown by sections 87, 88, 89, 90, Constitution of 1890, is violated by this act. We have already shown the general provisions of section 87. Section 88 provides that the legislature shall pass general laws under which local and private interests shall be provided for and protected and by section 89, it is required that each house of the legislature have a standing committee on local and private legislation and that no local or private bill shall be passed by either house until it shall have been referred to its committee and reported back with a recommendation in writing that it do pass and stating affirmatively the reason therefor and why the end to be accomplished should not be reached by a general law. By section 90, it is expressly stipulated that there shall be no local, private, or special legislation in several enumerated cases. One of the subjects embraced in section 90 or in the prohibition of section 90, is exemption of property from taxation or from levy or sale. We think that the requirement in section 112 of the Constitution of 1890 that the property shall be assessed for taxes under general laws, and by uniform rules should be treated in connection with the enumerated cases in section 90. The language in section 90 is negative and in section 112 affirmative and positive. The necessary implication is that when a matter is directed to be done in a certain way, then, it shall not be done and cannot be done in some other way. Construing sections 90 and 112 together, they might be read as follows: ''The legislature shall not pass local, private, or special laws in any of the following enumerated cases but such matters shall be provided for only by general laws, namely: ''Then, after paragraph U, section 90, might be added the following: ''V. Providing for the assessment of property for taxes when the object is for purposes of general revenue.'' It looks like the Act of 1908 is so manifestly unconstitutional and void that argument to demonstrate the fact should be unnecessary.

COOK, P. J., delivered the opinion of the court

There is one question raised by this record, which, in our opinion, is decisive of this appeal, and we will consider no other point raised by the briefs of counsel. The case was considered and decided by Division A, and the opinion then rendered will be found reported in 110 Miss. 859, 71 So. 9. After this opinion was rendered counsel for appellee filed a motion, asking that the judgment rendered in response to the opinion be set aside and vacated, and, for reasons satisfactory to Division A, this motion was sustained, and the record was then submitted to the court *en banc,* on briefs, and this opinion is therefore the opinion of the court sitting *en banc.*

The determinative question referred to in the beginning of this opinion is this: Is chapter 239, Laws of 1908, violative of section 112 of the state Constitution? The land involved in this suit, it is admitted, was assessed under that act of the legislature, and this action was instituted to confirm a tax title obtained by virtue of a tax sale under the authority of an assessment made under the aforementioned chapter 239. Section 1 of said act authorized the board of supervisors of Lincoln county "in its discretion, at its regular meeting in April, 1908, to order an assessment of the lands of the county to be in lieu of the last . . . assessment of lands therein." The board of supervisors, in pursuance of the authority thus granted, ordered a special assessment of the lands of the county in lieu of the regular theretofore made in 1906 under the general laws of the state, and the land in controversy in this suit was sold for the nonpayment of the taxes so assessed.

Without copying into this opinion section 112 of the Constitution, we will refer to the language of the section believed to be pertinent to the law of this case. The first sentence of the section commands that "taxation shall be uniform and equal throughout the state." The third sentence of the Constitution contains this mandate: "Property shall be assessed for taxes under

general laws, and by uniform rules.'' A law for the assessment of taxes that is not general in its scope and does not provide a rule consistent with the general rule, violates both of the rules prescribed by the Constitution. The law under review does not purport to be a general law; it is, in terms, a special law, and local in its application. The law undertakes to provide for some real or imaginary condition existing in Lincoln county, and then authorizes an assessment of lands in Lincoln county not authorized in the remaining counties of the state. If this law is not void, it is manfest that special and different laws for every county of the state could be passed. The known fecundity of the legislative mind resulted in the adoption of this limitation upon their procreative powers. It is one of the well-known facts that members of the legislature either believe, or some of their constituents believe, that they represent a constituency different from the common run of folks, and therefore a special bill must be passed limited to the peculiar conditions at home. This fact accounts for the numerous special laws, a very large portion of which serve no good purpose. So it was the makers of the Constitution put on the brakes so far as the assessment of property is concerned, or, rather, to be more accurate, the people in convention assembled attempted to make it plain that special laws for the assessment of property should never be introduced or passed. There are numerous ''shall nots'' in the Constitution that are habitually disregarded, and the one under discussian comes in for frequent contemptous treatment for no apparent or imaginable reason.

It seems that a mere casual reading of the section in point would convince one that the act of the legislature (chapter 239, Laws of 1908) is in direct and palpable conflict with section 112 of the Constitution; at least we so believe; and the judgment of the chancery court of Lincoln county so holding is approved.

*Affirmed.*

STEVENS, J. (dissenting). As I understand the majority opinion, my brethren strike down chapter 239, Laws of 1908, for the sole reason that it violates section 112 of the Constitution. The two sentences quoted in the majority opinion as being contravened by the statute in question are the following:

"Taxation shall be uniform and equal throughout the state. . . . Property shall be assessed for taxes under general laws, and by uniform rules."

While the majority opinion quotes the first sentence as being in point, it is not stated how and in what manner a new assessment for Lincoln county would possibly violate either the uniformity or equality guaranteed by the Constitution. The reasoning of my Brethren is founded upon the assumption that the statute under review is a special and not a general law, and that any special law "for the assessment of taxes" violates "both of the rules prescribed by the Constitution." The only controversy or possible doubt about the constitutionality of this act can arise, and can only arise, from the interpretation of the words, "property shall be assessed for taxes under general laws." What then is the meaning of this language as employed by the framers of our organic law? What is the object sought to be attained by this sentence? In my judgment this language does not forbid a special reassessment or new assessment of property in any county, whose assessment rolls prove to be erroneous and imperfect. The language here employed by the framers of the Constitution is in reference to "property"—the taxable property of our state shall be assessed for taxes under general laws and by uniform rules. It does not control the time when assessment shall be made. The object of this constitutional provision was to apply the same general scheme of taxation over the entire state, to adopt uniform rules applicable throughout the entire confines of our commonwealth. By these uniform rules property was to be valued for taxation. The purpose

was to provide the same yardstick by which the obligation of all taxpayers in Mississippi must be measured. The assessing of property for taxation is the work of a constitutional officer, an assessor, in each county. In making the assessment the assessor under the constitutional plan must apply the yardstick without discrimination, and must proceed "under general laws and by uniform rules." The general laws here referred to control the assessor and the board in the method of listing, classifying, valuing, and equalizing. These general laws and uniform rules have been provided by our legislature, and now appear as chapter 122 of the Code on "Revenue." The act under review authorizes a new assessment of lands in Lincoln county, and when the assessor by virtue of this act proceeded to make a new assessment, he did so under the general laws and in accordance with the uniform rules guaranteed by the Constitution. The very act in question expressly provides that the new assessment is to be made, returned, received and approved by the board "in the same manner and form as required by chapter 122 of the Mississippi Code of 1906, for regular land assessments," and by section 4 of the act it is expressly provided that the assessor "shall assess the land in said county, complying in all respects with the law governing general land assessments in this state."

There is not the slightest intimation in this record that the assessor did not conform to the general laws and uniform rules so jealously guarded by the majority opinion. On the contrary, it is conceded that the new assessment was made, filed, and approved in strict accordance with our revenue laws. The Constitution only provides that property shall be assessed under general laws; the majority opinion goes further, and declares, in effect, that all land must be assessed at one general time. The effect of this opinion is to nullify the entire land assessment roll of Lincoln county for the year in question and to invalidate all tax sales made there-

under, both to the state and to individuals. Results
so drastic and far-reaching ought not to follow an
honest effort on the part of the legislature to perfect an
erroneous assessment in any county. The legislature did
not here enact any new method of assessing property.
It did not add one jot or one tittle to the general rules
whereby property was to be assesseed. In proceeding
with his work the assessor made use of the same lists or
statements upon which each taxpayer rendered an
account of all his taxable real estate in Lincoln county;
these lists used by the individual taxpayers were the
same lists used by taxpayers everywhere in Mississippi;
the assessor transcribed from these lists to the assess-
ment roll the description and valuation of property in
the same way that every other assessor in Mississippi
proceeds to do when the regular assessments are made.
The roll is filed with the board of supervisors and ap-
proved by them at the meeting provided by the general
laws, and in the consideration of this land roll there
was a revenue session of the board at which every tax-
payer had the opportunity to object or to seek equali-
zation in accordance with the general statutes on the
subject. The taxpayer in giving in his property for
assessment and the board in equalizing the assessments
in this case are presumed to have assessed land ''at
its true value'' in accordance with the constitutional
scheme. No one is here complaining that his land was
assessed for more than it was worth at the time the
new assessment was made. There is no showing here
whatever that any taxpayer was hurt. The entire roll
is here struck down as having been made and approved
without authority of law. The majority opinion is
based on lack of power, and not on the method in which
the roll was made up.

In squaring the act with the Constitution, it is ele-
mentary that all doubts should be resolved in favor of
the statute. It should be remembered also that in all
matters of taxation the legislature when it acts within

constitutional limits is supreme. This is the express holding of our court in *Street* v. *Columbus,* 75 Miss. 822, 23 So. 773. Our court has also declared that the legislature has large discretion in carrying out the constitutional scheme that taxes be equal and uniform, and that unless the legislature has plainly violated the Constitution the courts should not intervene. *Vicksburg Bank* v. *Worrell,* 67 Miss. 47, 7 So. 219. Instead of resolving every doubt in favor of the act here under review, my Brethren, in my judgment, stick in the bark, and so construe the language of our Constitution as to deny altogether the right of the legislature to come to the relief of any county whose assessments for any reason are palpably erroneous and imperfect. The very statute here attacked declares in its preamble that:

"The present land assessment of Lincoln county is so erroneous and imperfect as to cause inconvenience, unnecessary trouble, and financial loss to the state, and to the taxpayer in such county.".

The legislature found, as a matter of fact, that this condition existed, and if such was in fact the condition, then I assert that the constitutional scheme for assessing lands in Lincoln county was being thwarted and defeated by an imperfect assessment, and instead of the special act here questioned being in contravention of the constitutional scheme, it was designed to carry out and perfect, and did perfect, the constitutional plan of taxation, securing to all the taxpayers of Lincoln county that equality and uniformity safeguarded by our organic law. An exigency had arisen in Lincoln county, as it is liable to arise in any county, and in meeting this exigency—this admitted defect in the assessment— the legislature had the undoubted right to act. The land roll is merely the evidence of a valid land assessment. The assessing of land under general laws and by uniform rules is one thing, and a roll evidencing that assessment is another. Section 112 was never designed to forbid the getting up of a new assessment roll in any

county. The legislature has so construed this section of the Constitution, and a construction which the legislature, as a co-ordinate branch of the government, has placed upon this section is entitled to some weight. Reference to the Acts of the legislature of 1916 will disclose, I think, special acts authorizing a new assessment for Covington, Jones, Pearl River, and Quitman counties. If these counties thus authorized to make new assessments have acted under the power thus conferred, then their labor, under the majority opinion, has been in vain; and the effect of the majority holding in this case will be to plunge into chaos the revenue laws of many counties and vitiate many a tax sale in Mississippi.

Equality and uniformity was securely guaranteed by the Constitution of 1869 (article 12 section 20) yet our court held that the legislature had the right to pass curative statutes validating an irregular or void assessment. *Vaugan* v. *Swayzie et al.,* 56 Miss. 704. If the legislature could have cured by statute an irregular assessment without violating the spirit of equality and uniformity, then it certainly should have the right by statute to order a new assessment in any county to accomplish the same salutary purpose. In fact the right of the state to order or require a reassessment is recognized by all the authorities that have been brought to my attention. Mr. Cooley in his work on Taxation (3d Ed.), vol. 1, pp. 526, 527, says:

"The method of curing defects by reassessment of the tax is less open to abuse than any that has hitherto been mentioned. Whether this be done by general law, which shall provide for all cases in which tax proceedings prove invalid, and authorize the same tax to be imposed on the persons or property that ought to be charged therewith, by proceedings begun *de novo,* or on the other hand, shall assume the form of a special law providing for the like reassessment in any particular case, it is scarcely possible that it should cause serious injustice beyond what is incident to all tax legis-

lation. In the new proceedings the party concerned will have the opportunity to watch the various steps, and to be heard in review of them, that he has in any case, and he will be precluded by nothing that has taken place in the proceedings which have proved abortive. The reassessment will be for the purpose merely of enforcing against him a duty which he was likely to evade, by reason of the nonfeasance or misfeasances of the officers who ought to have enforced it; and, as the new proceeding will give him the same opportunity of being heard that is given in other cases, and will be conducted on principles that operate generally, he has no reasonable ground of complaint.''

This right to reassess is recognized also by the general statutes (section 4299 to 4301, inclusive, of the Code of 1906) authorizing boards of supervisors to order a reassessment of lands in any case where the land assessments are, in the judgment of the board, erroneous and improper. The majority opinion does not comment upon these statutes or state in what cases the same would be applicable. It would appear that these statutes, however, could not have been availed of by Lincoln county in the present instance. I take it that these sections of the Code only apply during the year when a general new assessment of real estate is being made, and only in the case where the asssessor brings in a new roll that is manifestly erroneous and improper. In that case instead of accepting and approving the imperfect new roll—a botched job—the board either on the first Monday of July or the first Monday of August of that year, and that year only, may order a reassessment, to be completed in such time as the board may direct, not exceeding ninety days. If I am correct in the assumption that these Code sections have no application except during the year when a new assessment of real estate is being made over the entire state, then a county after once approving an assessment roll could not, without a special act, bring in

a new assessment of real estate in a year intervening between the dates of the regular land assessments. In addition to the fact that the board may sometimes, by inadvertence or otherwise, approve an improper land roll, new conditions may arise, and frequently do arise, in a rapidly developing country, requiring many changes of assessments. Much valuable land is frequently subdivided in cities and towns, and the small parcels acquired by various individuals. Conditions are changed also by multiplied improvements and transfers. These changes would naturally aggravate the situation presented by an admittedly erroneous and improper roll. If the property of the taxpayer is assessed at its true value and the same rate is applied against him that is being applied against all taxpayers generally, then he ought not to complain. The constitutional rights of a taxpayer must be bottomed upon something substantial. The reassessment is in the interest of the taxpayer. It is designed to bring in for assessment valuable property that is escaping taxation, and otherwise to correct a known evil. Under such circumstances a reassessment is designed to secure the very equality and uniformity provided for by section 112 of the Constitution. It is not impossible for the land rolls of a county to be destroyed, lost, or stolen. Under the majority holding the legislature would absolutely be without power to supply the missing rolls by means of a new assessment. The Constitution does not require that all property shall be assessed at one general time. It is an admitted fact that personalty is assessed more frequently than real estate.

For the reasons indicated, this case should be reversed.

HOLDEN, J., concurs in this dissenting opinion.