PEARL RIVER COUNTY v. LACEY LUMBER CO.

[86 South. 755. No. 21449.]

1. TAXATION. *Act authorizing special assessment void under constitutional provision as to uniform laws.*

Under section 112 of the state Constitution, providing for equal and uniform laws for the assessing and valuation of property, chapter 475. Laws of 1916. authorizing Pearl River county to order a new assessment of real property, is void. *Horton* v. *King*, 113 Miss. 60, 73 So. 871, cited.

2. STATUTES. *Unconstitutional statute void from beginning.*

An unconstitutional law is void, it is mere waste paper, and no valid act can be done under it.

3. TAXATION. *Rule as to general or special protests to payment 'of tax stated.*

Where a tax levied under an unconstitutional law is paid under a general protest, it may be recovered. Where the act is void, or the assessment is void on its face, a general protest is sufficient. If the infirmity is caused by the failure to do a particular thing, or results from facts not apparent of record, a special protest is necessary.

4. TAXATION. *Disbursement of tax into different funds no defense to recovery of illegal tax collected.*

A county cannot shield itself from the repayment of an illegal tax paid under protest on the ground that such funds have been dis-

bursed to the several funds and taxing districts of the county, and may not be able to reimburse itself from such funds or districts.

5. Constitutional Law. .*Taxation. Code provisions held not to confer judicial powers as to claims for taxes illegally collected; legality of claim may be judicially contested.*

The scheme provided in section 4346, Code 1906 (Hemingway's Code, section 6980), does not confer judicial power on the auditor and the Attorney General, nor does the allowance of money out of the public treasury require a judicial proceeding. The scheme provided is an easy method to secure uniformity of practice and the judgment of competent officers to act; but the treasurer or other official may contest the legality of the claim in a judicial proceeding in the courts.

Appeal from circuit court of Pearl River County.

Hon. A. E. Weathersby, Judge.

Mandamus by the Lacey Lumber Company against Pearl River County to compel the issuance of a warrant for the payment of money. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Parker & Shivers,* for appellant.

We find the position taken by appellants in this proceeding, supported by the case of *Town of Tupelo* v. *Beard et al.,* 56 Miss. 532; a case where illegal taxes had been demanded, and collected, an unauthorized tax, where there was no law whatever, for its collection, the authorities collecting, and the persons paying, both acting under a misconception, a mistake, or ignorance of the law, the court there holding that such taxes could not be reclaimed, or recovered, no fraud or imposition being practiced.

In the case now before the court, there was no fraud or imposition practiced, there is none charged in the declaration, and, even though it had been charged in the declaration, the appellant's plea denies unquestionably any such, the allegation of which are admitted by the demurrers of appellee.

In the case of *City of Jackson* v. *Newman*, 59 Miss. 385, another case where taxes unauthorized by law was demanded, was collected, without authority of law, illegally, the tax collector had stated to the taxpayer, that he would stop (his team) and the taxpayer paid the taxes, but paid it complaining that it was exhorbitant. The court held that the taxes were beyond the power of the town, to levy or collect; that the taxpayer was entitled to recover unless the payment was voluntarily made. In discussing this question, see page 390, the court said: "Under what circumstance the payment of an illegal, unwarranted tax will be considered to have been made under compulsion, the authorities are widely divergent. In this state it is settled that, if at the time the demand is made, the collector is armed with authority of law, to seize the goods or arrest the party, if the taxes are not paid, and the party objects to its collection, because of its illegality, but pays to prevent a seizure of his goods, or the arrest of his person, the payment is compulsory and may be recovered back.

Citing *Vicksburg* v. *Butler*, 56 Miss. 72; on the other hand if the payment is made by the party without objection, it cannot be recovered, although nonpayment would have subjected him to criminal prosecution. In the case at bar the collector had no authority at the time he called on appellees for payment to seize his property, or to arrest his person, nor was any suggestion made that either would be attempted."

On the above statement of facts, our court held that there was no duress of person, or property, that the taxes were voluntarily paid, and that the taxpayer could not recover same. The above shows that our state is committed to the fact, that in order to recover taxes paid on a void law, or void assessment, one which is unauthorized and illegal, such taxes must be paid under a specific protest, as to the illegality of the law, and the tax paid, and that it cannot be recovered, just by the mere objection, or complaint by writing the word "protest" on the receipt. See *Town of Wesson* v. *Collins*, 72 Miss. 849,

18 So. 360, 917. The authorities hold that a protest must be full and specific, i. e., it must be an objection on the ground relied on for the recovery. 30 Cyc. 1410H.

To the same effect as the above decisions from our court we find in 26 Ruling Case Law, page 411, as follows: "In accordance with the general law governing voluntary payments, a person who voluntarily pays an illegal tax, even though he pays it under considerable actual pressure, cannot maintain an action to recover it back." This authority cites *Brusson* v. *Board of Directors of Crawford County Levee District*, 44 L. R. A. (N. S.) 293, 153 S. W. 828 Ann. Cas. 1915A. 493.

"Whatever may be the ground upon which objection to a tax or the assessment of it may be made, it is a well settled general rule that if the tax is paid by the person assessed voluntarily and without compulsion, it cannot be recovered back in an action at law." 37 Cyc. 1178, 37 Cyc. 1179; *Walter v. Board of Education, etc.*, 31 L. R. A. 329; *Merrill* v. *Austin*, 53 Cal. 379; *De Baker* v. *Carillo*, 52 Cal. 473, Cyc. 1315.

In the case at bar no reason or grounds, for the protest appear to have been given, and appellant pleaded that such protest as was made by appellees, gave no grounds whatever upon which his protest was based, the demurrer in this case admits the allegation of the plea, and we submit, that the great weight of authority is to the effect that a protest must be specific and should specify the grounds thereof. 37 Cyc. 1185; *New Orleans, etc., R. Co.* v. *La. Construction, etc., Co.*, 94 Am. St. Rep. 395; *Railroad Co.* v. *Commissioners*, 98 U. S. 541; Editor's note 94 Am. State Report, page 416, sec. 9. Passing to the question of the time, when refund of taxes can be made.

By appellant's second plea, pages 17-18 of the record it set up the defense, that appellee was estopped to recover the funds claimed in this action, by reason of its own delay in prosecuting its claim therefor, until the said money had been distributed into the various funds of the county, including agricultural school fund, consolidated

districts, separate school districts and had been legally paid out by the various authorities in control thereof.

By appellant's eighth plea, page 24 of the record, it set up the defense, that the board of supervisors could not make the levy necessary to satisfy the command of the writ of mandamus if same was issued. We refer to these defenses together in this brief since the line of reasoning on which they were interposed can, as we believe, be more satisfactorily handled jointly.

At the time these defenses were interposed, we were not unmindful of the fact that many authorities held that these defenses were not good, nor are we now unmindful of this line of decisions; yet many well reasoned decisions, and much valuable text law, hold that these defenses are good, and while there is much conflict in the authorities on this subject we have concluded that the conflict arises more, as a result of the circumstances and facts controlling in the different cases, than in the law governing the subject that on the conditions and requirements of our laws, in relation to the raising and distributing the revenue by which our various departments or Government are maintained and the peculiar facts in this case that the decided force of sound reason, and the law when applied to the peculiar facts of this case bears us out.

In support of our position above we invite the court's attention to the following authorities; 37 Cyc. page 1177; *Commonwealth of Kentucky v. Baske,* 11 L. R. A. (N. S.) 1104 and note; *New Orleans & N. E. R. R. Co.* v. *Louisiana Const., etc., Co.,* 94 Am. St. Rep. 395; *;Lisso & Bros.* v. *Police Jury, etc.,* 53 So. 566, 31 L. R. A. (N. S.) 1141; *Fuselier* v. *St. Landry Parish,* 107 La. 231, 31 So. 682.

The tax herein sued for was paid February 1, 1917, and claim therefor was presented to the auditor, and his certificate was issued thereon April 4, 1919, more than two years after payment, and admittedly after distribution and expenditure of the fund. Appellee might have refused to pay the tax as a sale of land therefor would have been

void, or might have enjoined the sale for the collection of the tax.

Since appellee has paid the tax, and allowed the matter to stand unclaimed, until all the funds have been expended by the various departments of said county, we contend that it is estopped to now make claim for and recover back the tax paid and expended. Mandamus is proper to force a county to provide for and pay a proper claim, by a levy which it is authorized to make, but in no case can a board of supervisors be compelled to make a levy unauthorized by the statute. *Beard* v. *Board of Supervisors,* Lee Co., 51 Miss. 542.

We confidently assert that the sounder line of reason, the better rule of right, and justice, bears out the authorities, that taxes will not be refunded after being distributed.

In the *U. S.* v. *Colorado Anthracite Company,* 56 Law Edition (U. S. Reports), page 1063: The court is discussing the repayments of funds under statute authorizing refund payment is erroneously allowed in speaking of the meaning of and interpretation of such language employed in a statute, says that such expression refers to or denotes some mistake or error, on the part of the land officers whereby an entry is allowed, when it should not be allowed and further holds that such language in a statute, cannot be given an interpretation which would countenance fraud, otherwise countenance something arising outside of the record.

As in the case at bar the language of section 1 of chapter 76 of the Laws of 1900, could be given no other interpretation by the state auditor; other than to apply same to errors on the part of the taxing authorities, in legally dealing with the assessment of property, and therefore could not apply to an illegal or unauthorized roll.

Volume 31, edition of Words and Phrases we find it stated: "There is a distinction between an erroneous and illegal assessment. An erroneous assessment is when the officers have powe r to act, but err in the exercise of the

power; and an illegal assessment is where they have no power to act at all. *Ford* v. *McGregor*, 23 Pac. 408, 509, 20 Nev. 445.

In the case of *Kehe* v. *Black Hawk*, 101 N. W. 281, for a refund of taxes in which statute it was provided that taxes erroneously and illegally paid would be refunded, etc., says that the town's taxes to have been erroneously or illegally exacted, or paid, means that the error, or illegality mentioned as referred to some mistake or unauthorized action of the officers authorized to assess and levy taxes upon property and not through an error or mistake of the taxpayer, etc.

In the lower court appellee relied on the cases of *Tuttle* v. *Everett*, 51 Miss. 27; *Adams* v. *Saunders*, 89 Miss. 773, 42 So. 602. Contending that said cases supported its contention we anticipate that appellee will contend on this hearing that these cases control and therefore call attention of the court to the facts of these particular cases, and we respectfully submit when the facts of said cases are compared with the facts in the case at bar, it will be seen that neither of said cases is in point or decisive of this cause.

Both cases are for the recovery of taxes remaining in the hands of the collector which had never been distributed as the taxes in this case. In *Tuttle* v. *Everett*, the action was by the taxpayer; in the Saunders case the action was by the state revenue agent, as a matter of course, it was held that the collector could not retain the money as on no theory could he assert a right thereto, merely holding it by virtue of his office. In the *Tuttle* v. *Everett* case, the court said that if the tax collector had distributed the money, plaintiff's actions would have to be against his principal, it did not undertake to say what plaintiff would have to establish before it recover from the principal nor did the court decide what defense on the part of the principal could be made or would be sufficient to defeat plaintiff's claim in such a case.

In the case of *Adams* v. *Saunders*, the court likewise said that the collector should turn the money over to the proper authorities authorized under the law to receive same, and that they could be trusted to take care of the disposition of the funds when that question arose, no protest having been made by the taxpayer. In both of these cases while the question was not before the court to decide, yet it said that if the funds had been distributed, plaintiff's recovery, if at all, would be by suit against the Governmental sub-division into whose treasuries the funds had been returned.

In the cases tried in our courts many years after the decision in the *Tuttle* v. *Everett* case to-wit: *Jackson* v. *Newman* and *Tupelo* v. *Board of Sup'rs,* our court deciding as in the *Tuttle* v. *Everett* case, that the recovery should be by suit announced as the settled law of the state, the defense which could be made by the defendant. The same defense is set up in this case; thus it will be seen that said cases are against appellee's position, and in fact, support appellant's theory of this case.

We submit that this record shows that the 1916 taxes collected by the officials of the state and its subdivisions, as an exercise of its sovereign power for the purpose of maintaining a perfect government, by the proper administration of its laws and as part of the general scheme of the Government for the protection of its citizens in the enjoyment of their fundamental rights, personal liberties, and private property, that appellee participated in the enjoyment and received enjoyment of the benefits, that it along with other taxpayers in said subdivision, and all shared alike the public burden and the public benefit the cause of consideration—for the other, that appellee made no complaint until after he had enjoyed the benefits with the other taxpayers; that on the facts as disclosed by this record, it should not now be permitted to recover in addition its part of the burdens.

*F. M. West,* for appellee.

The state has discharged its legal obligation to the appellee. The county declines to do likewise. By the reassessment of lands for the year 1916 the appellee paid three hundred sixty-five dollars and eight cents more in taxes than it did in 1915, and it is this excess that appellee claims.

The assessment for 1916 being void under the following decisions of this court, the 1915 assessment would stand as the last valid assessment; and, appellee having paid three hundred sixty-five dollars and eight cents more on the void assessment than it did on the last previously good assessment, it is entitled to a refund of the excess. *Horton* v. *King,* 73 Miss. 871, 113 Miss. 60; *Bullock* v. *Board of Supervisors, Covington County,* 77 So. 662.

This court, having held void the assessments made in Lincoln county and Covington county under special acts similar in all respects to that enacted for the benefit of Pearl River county, the appellee here proceeded under the authority of section 4346, Code 1906, to get a refund of taxes paid by him to the tax collector of Pearl River county under the said act of 1916.

Prior to the year 1900 the only remedy of the taxpayers who had paid money into the state and county treasuries under circumstances similar to that here presented was by a special relief act of the legislature. By the act of 1900, however, the state adopted a different policy in such matters. It is the settled law of this state and other jurisdictions that where a taxpayer is subjected to the payment of a tax which is illegal, an action will lie against the collector to recover it back unless he has paid it over to his superiors, in which event the action is against the corporation. *Tuttle* v. *Everett,* 51 Miss. 27; *Hawkins et al.* v. *The Board of Supervisors of Carroll County,* 50 Miss. 735; *Coulson* v. *Harris,* 43 Miss. 751.

Here the petition for the writ of mandamus alleged that the tax was paid under compulsion and protest. The defendant, by its fifth plea, took issue thereon, and said that the tax was voluntarily paid and without protest. To

this plea a demurrer was interposed and sustained by the court.

We contend that where an assessment is void, the tax is illegal, the payment is involuntary, and protest is not necessary in order that the taxpayer may recover the tax so paid. We contend also, that where the sovereign has provided statutory relief, as in this state (section 4346, Code 1906), protest of payment is not a condition precedent to the right to a refund of the tax paid. The section covers both voluntary and involuntary payments.

Section 4346 provides how the taxpayer may get a refund of a tax that is not due. Appellee paid a tax that was not due. He is entitled to a refund of the same. The state recognized his right to the refund and made him whole as to its part of the collection, and the appellant county should be forced to do likewise. *Rand* v. *United States,* 63 Law Ed. 731; *Simpson* v. *United States,* 64 Law Ed. 417 (U. S.); *United States* v. *Hvoslef,* 237 U. S. 1, 59 Law Ed. 813; Ann. Cases, 1916, A. P. 286; *Chesbrough* 1. U. S. 24 S. Ct. 253, 262, 48 U. S. (L. Ed.) 432.

The decision in Mississippi, in the *Tuttle case,* supra, is still the law here. An illegal tax is paid under compulsion, because not due. It is exacted when not due, and is refundable. That case clearly holds that the payment of a tax to one having formal authority to collect is involuntary and if the tax is illegal the amount paid may be recovered back.

That case was cited i nthe foowing cases: *Magnolia* v. *Sherman,* 46 Ark. 358; *Vicksburg* v. *Butler,* 56 Miss. 72. Cited in notes in 45 Am. Dec. 164, on recovery of illegal taxes paid under protest; 94 Am. St. Rep. 428, on general prerequisites to recover back taxes paid; 11 L. R. A. (N. S.) 1105, on right to recover money paid for illegal taxes after it has been paid over or distributed; 26 Am. Rep. 624, 21 L. Ed. (U. S.) 63, as to when taxes illegally assessed may be recovered back, cited in *M. & O. R. R. Co.* v. *Steiner,* 61 Ala. 559, holding that shipper paying illegal freight charges rather than forego carrier's services, may

recover same; *West Va. Transp. Co.* v. *Sweetser,* 25 W. Va. 434, holding that shipper may recover excessive charges demanded by only railroad available to him.   Cited in *Hawkins* v. *Mangum,* 72 Miss. 97, holding a void statute and assessments under it not validated by certain other statute.

In the instant case suit was not brought against the state for the reason that such could not be done.   The state, however, by Code section 4346, has obviated the necessity of a suit.   The county, however, having declined to follow the plain mandate of the statute, the appellee brought suit by means of his petition for a writ of mandamus after the board of supervisors had rejected and disallowed appellee's claim properly presented for allowance.

It cannot be denied that such a proceeding is a suit against the county.   In 45 Cent. Digest, section 999, we find this statement of the law: "Unless by authority of statute, money voluntarily paid to discharge a tax cannot be recovered back because the tax was void or irregular." Citing several cases.

Code section 4346 is sufficient statutory law to authorize a prepayment of the tax even though it should be held that the tax was voluntarily paid.   We contend, however, that the tax was not voluntarily paid under the Mississippi cases *supra.*   45 Cent. Dig., section, 999; *Wilson, Auditor* v. *Naylor,* 116 Miss. 573; *Taylor, Treasurer* v. *Guy,* 119 Miss. 357; *State* v. *Cole,* 81 Miss. 147; *McGehee* v. *Fitts,* 65 Miss. 357; *Supervisors Wilkinson County* v. *Fitts,* 63 Miss. 600.

Returning, briefly, to the proposition, as to when a payment will be considered involuntary, we refer the court to the law announced in 45 Cent. Dig., section 1002.   There the law is stated to be: "When taxes are paid on the demand of the officer having authority to collect them, there is sufficient duress to make the payment involuntary." Many authorities are there cited sustaining the text.   See, also, 55 Miss. 37, 75 Miss. 665.

In Mississippi the owner of land who fails to pay his taxes to the officer having authority to collect the same is surely liable to have his land sold for the nonpayment thereof. The case of *Board of Supervisors* v. *Bank,* 80 So. (Miss.) 530, decided by this court on January 27, 1919, was a case where the bank appealed from an alleged illegal assessment to the circuit court. This court, *inter alia,* held that the circuit court could not order a refund of the illegal tax and said:

"If any money has been improperly collected from the appellee under the erroneous assessment, it is entitled to a refund thereof under the provisions of section 4310, Code 1906 (section 6944, Hemingway's Code), but that question was not and could not have been presented in the court below in this proceeding." See, also, *Harrison County* v. *Roberson,* 83 So. (Miss.) 617.

It will be seen that nowhere does the sovereign require as a prerequisite to a refund that the taxes must have been paid under protest. The manifest purpose of those statutes is to refund to the taxpayer any taxes which have been erroneously or illegally paid by him; and those statutes provide that the claims shall be audited by the auditor and approved by the attorney general, and then allowed and paid.

While this court has not yet construed section 4346, Code 1906, we would direct attention to the following cases construing a similar statute of Iowa. See the following cases: *Lauman* v. *Des Moines County,* 29 Ia. 310; *Richards* v. *Wapello County,* 48 Ia. 507; *Dickey* v. *Polk County,* 58 Ia. 287. The Lauman case was followed or cited in the following instances: 39 Ia. 548, 40 Ia. 103, 42 Ia. 417, 46 Ia. 328, 51 Ia. 424, 53 Ia. 489, 56 Ia. 22, 69 Ia. 141, 64 Ia. 216, 107 Ia. 650, 129 Ia. 553, 168 Ia. 504, 506, 3 Wyo. 604, 791, 792, 7 Wyo. 277, 142 Cal. 663, 160 Cal. 77.

Further, as to the remedy of the appellee, see the state of the law found in 26 R. C. L., p. 470: "So also when a tax has been abated by the proper authorities, or has been directed to be refunded by the legislature, and the treas-

urer, or other disbursing officer refuses to pay over the money the persons entitled thereto may compel him to make payment by writ of mandamus." See the several cases cited in the note as supporting the text.

Here section 4346, Code 906, has provided relief to the taxpayer. The state has performed its duty and obligation under that statute. The county has refused; and appellee brought mandamus to compel the appellant to perform its clear duty as prescribed in said statute.

See particularly the case of *Eureka Pipe Line Co.* v. *Riggs,* Ann. Cas. 1918A, 995, and notes thereunder where it was held that the writ of mandamus against the collector after order for refund, did not abate with his death but could be revived against his successor; and that was held to be the law even though the original defendant had paid the money over to his successor and the latter had distributed it among the several funds of the county.

For a full discussion of the law, according the right of the taxpayer to a refund of an illegal tax, especially where the statute authorizes a refund, see the following cases: *Phoebus* v. *Manhattan Club,* 105 Va. 144, 8 Ann. Cas. 667, and elaborate notes; *Monagham* v. *Lewis,* 5 Penn. (Del.) 218; 10 Ann. Cas. 1048, and elaborate notes; 2 Cooley on Taxation (3 Ed.), page 1487.

In the following cases refunds were held proper under the statutes similar to that here involved: Stotesbury's Col. Inheritance Tax, 20 Pa. Co. Ct. 53; *Boston & Maine R. Co.* v. *State,* 63 N. H. 571; *Smith* v. *Comptroller of State,* 18 Wend. 657; *State* v. *Thompson,* 10 Ark. 61; *White* v. *Smith,* 23 So. (Ala.), 525; *McClandish* v. *Commonwealth,* 76 Vt. 1002; *Noyes* v. *State,* 46 Wis. 250, 32 Am. Rep. 710; *Coxe* v. *State,* 144 N. Y. 396; *Corkings* v. *State,* 99 N. Y. 491; *Western A. R. Co.* v. *State* (Ga.), 14 L. R. A. 438.

This court had already decided in the *Horton* and *Bullock cases, supra,* that acts exactly alike unto that here involved, were void, and that consequently the assessment was void, and the taxes collected thereunder illegally col-

lected. This court has performed the judicial acts spoken of by appellant, and it was only necessary that the auditor perform the administrative duties imposed upon him by the code section under review.

The statute clearly covers refunds of taxes paid into the treasury under mistake of fact and law; and where the highest court in the state has settled the law in favor of the taxpayer, as here, he is entitled to the refund, and it is not necessary that the auditor and attorney general exercise any judicial function therein and thereunder. This court has performed that function. Several years ago this court decided the case of *Rodge* v. *Kelly,* 88 Miss. 209. There this court held invalid a privilege tax statute imposing a tax of five hundred dollars upon each lender of money who took personal property as security.

The state of Mississippi refunded a considerable sum of money to the payers of that privilege tax because of that decision; and the writer of this brief represented several clients in getting refunds from the state treasury because of that decision. It was not necessary that each payer should litigate the matter. Rodge's case settled and defined the rights of Tom, Dick and Harry. They pursued the remedy provided by Code section 4346, here involved, and rightly so.

We will present argument upon the other two points together. 26 R. C. L., page 454 says:

"It is held in some jurisdictions that a taxpayer cannot maintain an action against a municipality to recover taxes illegally exacted after the money has been paid out by its disbursing officers; but the sounder rule is otherwise; and it is no defense to an action of this character that although the money was received by the municipality it was not to be used by municipal purposes."

The Kentucky court of appeals, in the case *Moc. of Ky.* v. *Boske,* 99 S. W. 316, 11 L. R. A. (N. S.) 1104, decided that after the county had disbursed the money the taxpayer could not maintain a suit against the county to recover taxes illegally and wrongfully exacted by the officers

thereof. An examination of that case will show that the court based its decision upon the point that, since there was no statute authorizing suits against the county, the county was not liable to suit. We have no such law in Mississippi. The county can be sued in this state.

The notes to that case cite the case of *Tuttle* v. *Everett* (Miss.), *supra,* and states the rule in Mississippi. We direct the court's attention to the notes which are cited in 26 R. C. L., *supra,* as supporting our contention, and particularly would we call the court's attention to the following cases cited in said notes: *Shoemaker* v. *Grant County,* 36 Ind. 175; *Du Bois* v. *Lake County,* 10 Ind. App. 347, 37 N. E. 1056, 19 Ind. App. 64, 68, 24 Ind. App. 74, 55 Ind. App. 538, 188 U. S. 686, 47 L. Ed. 655, 134 Cal. 475, 142 Cal. 663.

We have in Mississippi a statutory remedy, and appelee is availing itself of it. See, also, the case of *Montgomery* v. *Cowlitz County,* 14 Wash. 230, 44 Pac. 259, where the money had been distributed after collection, and the court held that the taxpayer was not prevented from recovery for the acts of the officers whom he could not control, who had disbursed the money before he brought suit.

That case was followed or cited in the following instances: 18 Wash. 259, 34 Wash. 149, 52 Wash. 344, 54 Wash. 579, 56 Wash. 164, 88 Wash. 92, 98 Wash. 147; See the case of *Grand Rapids* v. *Blakely,* 40 Mich. 367, 29 Am. Rep. 539; *Joyner* v. *Third Sch. Dist. in Egremont,* 3 Cush. 567; *Mich. Sanitarium & Benev. Asso.* v. *Battle Creek,* 138; *Peyser* v. *Mayor,* 70 N. Y. 497, 26 Am. Rep. 624.

Appellant contends that because appellee did not protest at the time of payment, and set out specifically the grounds of protest, no recovery can be had now. We cannot so agree. In the case of *Whitford* v. *Clarke,* 80 Atl. (R. I.) 257, 36 L. R. A. (N. S.) 476.

The court there held that the grounds of protest which accompanies a payment of taxes need not be set out in order to authorize a recovery of the amount paid, if the

tax was invalid. *Stewart* v. *Barnes,* 153 U. S. 456, 38 L. Ed. 781; *Whitford* v. *Clark, supra,* reported in 36 L. R. A. (N. S.) 476. We maintain that in Mississippi, because of section 4346 of the Code of 1906, protest is not necessary. 26 R. C. L., p. 459.

The cases and text relied upon by appellant as sustaining its contention that, before recovery can be had, protest of payment must be shown, will be found, upon examination, to be based upon the common law, and not upon refunding statutes.

They are wholly inapplicable here, for, since the enactment of the statute under review, protest of payment is not a necessary prerequisite to the right of recovery. The statute covers alike both voluntary and involuntary payments.

Appellant relies upon the following case: *Town of Tupelo* v. *Beard et al.,* 56 Miss. 532; *City of Jackson* v. *Newman,* 59 Miss. 385.

In each of those cases this court held that the payments were voluntary and could not be recovered. They are easily distinguishable from *Tuttle* v. *Everett,* and *Vicksburg* v. *Butler, supra.* Be that as it may, however, the Beard and Newman cases are of no importance now, for the reason that voluntary payments are refundable, just as are involuntary ones, under the statute under review.

Counsel rely upon a statement of the law found in 26 R. C. L. 411 as follows: "In accordance with the general law governing voluntary payments, a person who voluntarily pays an illegal tax even though he pays it under considerable actual pressure, cannot maintain an action to recover it back."

This is a statement of the common law, merely, and it is not based upon any refunding statute. Appellant then cites the case of *Brusson* v. *Crawford County Levee District* (Ark.), 44 L. R. A. (N. S.) 293, 153 S. W. 828, Ann. Cas. 1915A. 493.

This was a decision by the supreme court of Arkansas, February 10, 1913, and a casual reading will show that it is based upon the common law purely.

Appellant also relies upon the case of *New Orleans etc., R. Co.* v. *La. Const. Co.,* 94 Am. St. Rep. 395, holding that if the person against whom demand is made, has full opportunity at the time to test the legality of the exaction he should do so, and not postpone the litigation by making payment and afterwards suing to recover it back. We would direct the court's attention to the second paragraph of the syllabus of that case. It reads:

"Payment is not considered voluntary where the parties are not on equal terms, where the payee has no choice or where the only alternative is to submit to an illegal exaction or discontinue business." Appellant says that appellee should prevail because of the case of *Railroad Co.* v. *Commissioners, etc.,* 98 U. S. 541, 25 L. Ed. 196.

A reading of that case will show very clearly that the decision was based upon the common law, and not upon any statute giving the right to a refund. This court has very recently passed upon this question in the case of *Town of Crenshaw* v. *Jackson, et al., Board of Supervisors of Panola County* (No. 20950), 84 So. 912 (June 14, 1920), by holding that distribution of the funds collected for road purposes was no defense in an action of mandamus to compel the board to pay a judgment against the county. The court held that if the county did not have the money in its general county fund it had the right, and it was its duty, to issue bonds under chapter 209, Laws of 1918, to pay the same.

The court will observe in the instant case that the appellee alleges in its petition for mandamus that it was the duty of appellant under chapter 209, Laws 1918, to pay the claim of appellee, and that if the general funds were insufficient for that purpose, that bonds should be issued under said law to discharge the same. It is no defense to say that since the funds have been distributed the board has no power to allow the claim. If it has no funds with

which to pay the claim the statute (Laws 1918, (chapter 209) provides the means. Counsel, on page 21, of their brief, cite "Words and Phrases" in pointing out the distinction between erroneous and illegal assessments. Their whole argument to this court is that only erroneous payments are covered by the statute. They have entirely overlooked the first sentence of the statute reading as follows:

"The auditor of public accounts is hereby authorized and required to make a careful investigation of all claims presented for moneys paid for *ad valorem* or privilege taxes not due, etc., . . . or if he shall find that any taxes or moneys have been or may hereafter be erroneously paid therefor into the treasury of the state, county or levee boards, etc, etc."

Counsel's whole argument is an attack upon the right of the legislature to regulate county affairs. The counties are mere political subdivisions of the state; and the state through its legislature, has the undoubted right to pass laws for the regulation of affairs in the county. This statement of the law needs no argument to support it. The code of laws covers almost every available subject relating to the county; and for counsel to contend that the auditor and attorney general had no right to exercise the functions given them by the statute under review, is another way of saying the legislature had no right to regulate county affairs. The legislature has the right to abolish a county if it desires, and to appoint a receiver to collect its taxes and distribute the same. No constitutional objection can prevail against the validity of the statute in controversy.

*Tippecanoe County* v. *Lucas,* 93 U. S. 108, 23 L. Ed. 822, and the numerous cases to be found listed on page 5565 of Vol. 5, United States Digest, under the subject of "Taxes" and "Refunding Payments."

In the Tippecanoe County case the court held that the refunding of taxes to taxpayers of a county or other municipal corporation may be ordered by the state legislature; and this power infringes upon no provision of the federal

constitution. The tax paid by appellee was involuntary, because paid under a void assessment, and the collector was clothed with authority to enforce payment.

It is immaterial whether the payment be considered as voluntary or involuntary because of the refunding statute. The fact that the money has been distributed by the county is no defense.

Every case cited by appellant denying the right to a refund is based upon the common law instead of upon refunding statutes. By section 4346, the state of Mississippi is putting itself in line with the federal government and other modern states, which have adopted refunding statutes as an expeditious and business-like way of dealing with its citizens who have paid taxes which they do not lawfully owe.

We respectfully submit that the decision of the lower court should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The Lacey Lumber Company, a corporation, filed a petition for mandamus in the circuit court of Pearl River county setting forth that it was a taxpayer of the said county owning large quantities of land in the said county; that in 1916 the legislature of the state passed a bill (chapter 475, Laws of 1916) providing for a new and special assessment of lands of Pearl River county to take the place of the assessment made in 1915, which was the year for the regular land assessment; that after the passage of the said act the taxing authorities of Pearl River county proceeded to make an assessment under said special act, and that the lands so assessed were valued higher in the year 1916 than they were under the regular 1915 assessment; that the state tax in excess of the amount due under the 1915 law equaled ninety-eight dollars and thirty-four cents, and that the excess of the county tax amounted to three hundred and sixty-eight dollars and seventy-seven cents; that the petitioner paid to the tax collector the said sum of money demanded by him as taxes due on said lands for the year 1916 under compulsion and pro-

test duly entered on the face of the receipts for said money; that afterwards application was made to the auditor of public accounts and to the attorney general for a refund of the amount in excess of the 1915 assessment under section 4346, Code of 1906 (Hemingway's Code, section 6980), and that the auditor and the attorney-general approved and allowed said application for a refund and refunded the state taxes paid in excess of the 1915 assessment, and certified to the board of supervisors the amount which the county should refund, but the board of supervisors refused to allow the amount certified and rejected and disallowed the claim. It is further alleged that the petitioner has no adequate remedy at law than that of mandamus, and prayed for the issuance of a writ of mandamus.

Appended to the petition as an exhibit thereto is the following:

"State of Mississippi to Lacey Lumber Company, Dr.

"For amount due them on account of an erroneous payment into the state treasury of taxes for the fiscal year 1916, as per vouchers and evidence, on which such claim is based, filed herewith, on the following property in the county of Pearl River as per the following statement:

| Description. | State Tax. | County Tax. | Levee Taxes Ad Val. Acre. | Total Tax. | Fees and Damages. | Excess of Bid. |
|---|---|---|---|---|---|---|
| See attached tax receipt. | | | | | | |
| Assessed val. 1916, | $28,975 | | | | | |
| "         "       1915, | 12,585 | | | | | |
| | 16,390 | | | | | |
| | | | | | 98.34 | 368.77 |
| Totals, | | | | | 98.34 | 368.77 |
| Less tax collector's commission, | | | | | .98 | 3.64 |
| Net amounts to be refunded | | | | | 97.36 | 365.08 |

"State of Mississippi, Auditor's Office.

"To the Board of Supervisors of Pearl River county, Mississippi:

"This is to certify that the above is a true and correct copy of a statement of taxes erroneously paid by the party or parties named therein, which, having been duly audited by the auditor of public accounts, was allowed by him on the 4th day of April, 1919, in accordance with the requirements of sections 3947, 2948, 4335, 4346, 4347, 3248, and 2927 of the Code of 1906, upon the approval of the attorney general, and that the amounts of taxes and excess of bid to be refunded from the treasury of said county by said board, in accordance with the requirements of said sections, to said party or parties named above, the taxes three hundred and sixty-five dollars and eight cents and excess of bid $————.

"Witness my hand and seal of office, done in my office, in the city of Jackson, Hinds county, Mississippi, this the 4th day of April, 1919.

"[Signed]    Robert E. Wilson, Auditor,
                      "By W. J. Miller, Deputy Auditor.

"(See section 4346.)"

The order of the board of supervisors rejecting the claim is also made an exhibit to the petition.

To this petition a plea of the general issue was filed in the following words:

"Comes now the defendant, by Parker & Shivers, its attorneys, and defends the wrong and injury when, etc., and says that it is not guilty of the said supposed wrongs and injuries charged against it in plaintiff's said declaration nor any part thereof, and of this it puts itself upon the country."

The defendant also filed ten special pleas:

(1) That the funds collected were distributed into the various county road and school districts and taxing districts and that the plaintiff was estopped by delay in presenting the application until after the distribution of the funds.

(2) That the auditor is not authorized under section 4346, Code of 1906 (Hemingway's Code, section 6980), to order and adjudicate a claim for money paid, as such claim was and is a contested claim, and has not been adjudicated by any court of competent jurisdiction, and

that said section does not vest in the auditor and the attorney general jurisdiction and power to try and adjudicate contested claims, and that their action is void and not binding on the county.

(3) That the certificate of the auditor fails to set out the amounts due from the several funds, and therefore the board could not lawfully issue a warrant therefor.

(4) That the petitioner paid the taxes voluntarily and without protest.

(5) That the action of the auditor and the attorney general was taken without notice to the county, and therefore was without due process of law and in violation of the Constitution.

(6) That the said claim is now a disputed claim, and is not one affixed and approved by the law, and is not a debt against the county, and is not required to be paid by chapter 209, Laws of 1918.

(7) That the taxes were collected for various county purposes and funds and held in trust by the county for the various school districts, and are now paid over to the various districts, and that the board of trustees of the districts alone have a right to fix the levy for such districts, and the board of supervisors has no discretion as to these levies and no authority to make a levy therefor, nor any authority to force said trustees to make a levy, and that to grant the writ would require it to do an unlawful act.

(8) That payment was voluntarily made and no protest was made on the ground that the act of 1916 was unconstitutional, and no protest was made on the ground that they were illegally demanded and collected on a void assessment or an assessment made under an unconstitutional law.

(9) Because petitioner has an adequate, plain, and speedy remedy in the ordinary course of law to adjudicate its rights and recover any funds due it.

(10) That, although the assessment for 1916 might have been unconstitutional, the assessment was made and ap-

proved and stands on the books as a valid, constitutional, and binding law on the tax collector and petitioner at the time the taxes were paid, and especially so in view of the case of *Horton* v. *King*, 110 Miss. 859, 71 So. 9, which case at that time had not been overruled, and that said taxes were legally due when paid, and were not paid under any protest whatever that the assessment was illegal and void; that while a similar act was held unconstitutional February 5, 1917, the Pearl River county's act has never been declared unconstitutional, and the decision of the supreme court declaring a similar act unconstitutional did not revert back and decide that the taxes paid by the petitioner were not legally due when paid, and therefore that the act of the auditor is void, etc.

Pleas Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 11 were demurred to, and plea No. 10 was moved to be stricken from the files, and it was agreed that the cause be submited to the judge on petition, a certificate of the auditor thereto attached, and a copy of the order of the board of supervisors of Pearl River county denying the claim, pleas of the defendant, the demurrers to all the pleas except Nos. 1 and 10, and the motion to strike plea No. 10, for final determination of the rights of the parties herein.

The court sustained the demurrers to all from No. 2 to No. 9, and also No. 11, and sustained the motion to strike out plea No. 10, and ordered the board of supervisors to issue the warrant as prayed for in the mandamus.

The main proposition for decision is the constitutionality of the act of 1916 authorizing the special assessment of the lands in Pearl River county.

In the case of *Horton* v. *King*, 113 Miss. 60, 73 So. 871, this court held that it was not competent for the legislature to pass a special act applicable alone to one county for the assessment of property, and declared an act of the legislature authorizing a special assessment applicable to only one county to be unconstitutional and void. And in the case of *Bullock* v. *Board of Supervisors of Covington County*, 77 So. 662, this court held that another special

act for assessment of real estate in one county was also unconstitutional and void, citing the case of *Horton* v. *King,* 113 Miss. 60, 73 So. 871. It is clear from a consideration of these cases that the law in the present case is unconstitutional and void.

It is insisted that, while the act is on all four with the acts condemned in the other cases, those decisions will not control the court in the determination of the present case and that the assessment ought to be upheld because the original decision of Division A of this court in the case of *Horton* v. *King,* as reported in 110 Miss. 859, 71 So. 9, held that the assessment was valid, and it is insisted that the assessment in the present case was made or ordered during the time this announcement was in force and before its reversal on suggestion of error. It is also urged that the statute has never been declared unconstitutional, and that it stands as a valid statute until so declared to be unconstitutional. Neither of these contentions can be countenanced for the reason that an unconstitutional law is absolutely void. It is, in effect, mere waste paper, and no rights can accrue under it.

Several questions are presented in the briefs and were attempted to be set forth in the special pleas above mentioned, and especially is it argued and insisted that the tax was paid voluntarily, without protest or compulsion, and for that reason cannot be recovered back.

The petition for mandamus set forth that the payment was made under protest and that the tax receipt was so marked to show that it was paid under protest. The special plea on this subject seems to attempt to raise the question that no specific protest was made on the ground that the law was unconstitutional and the assessment void for that reason. It seems to be conceded in the argument that the protest was made in general terms and the tax receipts marked "Paid under protest," but it is contended that the protest must be special and point out the particular ground on which the objection is based.

In our opinion, where a proceeding is void on its face and cannot be upheld at all, a protest in general terms is sufficient. But, if the defect arises from some failure to observe some requirement, or from some fact not appearing upon the face of the record, the protest ought to be special and call attention to the defect.

We do not think that the county can shield itself from repayment of money collected under an unconstitutional law, paid under protest on the ground that the county has disbursed the money so collected into various taxing districts, or has expended the money which it wrongfully collected. The fact that the county might not be able to recover from the taxing districts the amount of money paid to such districts would not exempt it from liability to the taxpayer from whom it wrongfully collected it.

We do not think that the auditor and the attorney general, in acting under section 4346, Code of 1906 (Hemingway's Code, section 6980), acted judicially, nor is a judicial proceeding necessary to authorize the allowance of money out of a public treasury or a public fund. The scheme provided in that section is an easy method of refunding to the taxpayer moneys which have been paid erroneously into the treasury. The scheme seems to contemplate that the error must appear on the face of the record, and that no moneys can be refunded unless and until they have been approved by the auditor and the attorney general, and come within the purview of the law. It is an easy and inexpensive method of refunding erroneous payments of taxes and secures the consideration and attention of competent officers and secures uniformity in practice in refunding. We do not think, however, that the approval of a claim by these officers make it mandatory upon the treasurer or the county board to refund if they in good faith believe there is a good defense to the claim.

In cases involving constitutional questions or intricate law points we think the right exists in the officers representing the public to contest liability.

We have said this much because we thought it best to announce the principles by which the court would be guided. There was a plea of the general issue interposed which, of course, denied all of the material allegations of the petition for mandamus. There was no evidence introduced, and with the general issue denying the allegations of the petition it was error to proceed to judgment or to grant the writ when the allegations were thus denied. The denial was effective to dispute the allegations that the claim had been presented to the auditor and the attorney general. The record in this case does not contain the petition filed with the auditor, nor is there anything to show what facts influenced the decision of the auditor and the attorney general, if indeed they allowed the claim as alleged. This is not a case tried on an agreed statement of facts, and, as the general issue puts in issue all facts set forth in the petition, it was error to render judgment requiring the board of supervisors to make the allowance.

*Reversed and remanded.*